Archie MORENO, Appellant,

v.

M.V., M.D. and A.M., M.D., Appellees.

No. 08-03-00476-CV.

Court of Appeals of Texas, El Paso.

July 14, 2005.

Patrick Bramblett, Bramblett & Associates, El Paso, for Appellant.

H. Keith Myers, Mounce, Green, Myers, Safi & Galatzan, Cynthia C. Llamas, Hicks & Lucky, P.C., William V. Ballew III, Scott, Hulse, Marshall, Feuille, Finger & Thurmond, El Paso, for Appellees.

Before BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

RICHARD BARAJAS, Chief Justice.

This is an appeal from the granting of a directed verdict against Appellant, Archie Moreno, in favor of all defendants below. Suit was originally filed by Appellant against Appellees seeking damages related to the medical treatment received by Appellant at Columbia Medical Center–East, as provided by Appellee physicians. Appellant presented himself to the emergency room at Columbia Medical Center–East suffering from abdominal pain. The Appellee physicians provided an initial evaluation and subsequent care. Appellant ultimately underwent abdominal surgery and was diagnosed with a ruptured appendix. Appellant claims that he suffered complications related to the delay in the diagnosis of appendicitis and delay in surgery, for which he sued. After Appellant completed the presentation of his evidence, all Appellees moved for a directed verdict in favor of each Appellee. The trial court granted each Appellee's motion. Appellant appealed the granting of the directed verdicts against the Appellee doctors only. For the reasons stated, we affirm the judgment of the trial court.

## I. SUMMARY OF THE EVIDENCE

In his Fourth Amended Petition filed March 5, 1998, Appellant herein filed suit against Columbia Medical Center–East, Murray Vann, M.D. and Ascencion Mena, M.D., complaining about the medical care he had received at the defendant hospital

and provided by the defendant physicians. On August 25, 2003, the parties proceeded to trial before a jury. After the plaintiff's case-in-chief, each defendant moved for a directed verdict on the claims asserted by the plaintiff. The trial court granted the directed verdicts and entered a judgment in favor of each defendant below.

Appellant appeals only from the judgments entered in favor of the physician defendants and has presented us with a limited record on appeal. Appellant raises two issues complaining that the "trial court erred in granting Appellees' Motion [sic] for Directed Verdict because the evidence raised fact issues as to a breach of the standard of care" and contending that "the trial court erred in granting Appellees' Motion [sic] for Directed Verdict as a material fact issue exists as to causation" as to both Appellees. We note that Appellant has come forward with a reporter's record that presents only the testimony of Appellant's physician expert witness, Dr. Terry Simpson, and the post-trial motions. The only exhibit included in the reporter's record is Dr. Simpson's curriculum vitae. Similarly, Appellant only requested that a partial clerk's record be included on appeal.

The substantive facts are not disputed by the parties. Appellant arrived at the emergency room at Columbia Medical Center–East on the evening of April 16, 1995 complaining of abdominal pain, nausea, and vomiting. Appellee, Ascencion Mena, M.D. (Dr. Mena) was the first physician in the emergency room to have contact with Appellant. Appellant had a history of kidney stones and presented symptoms consistent with a kidney stone. Dr. Mena ordered an extensive workup of Appellant's complaints that included tests that evaluated other potential problems as well. Appellant's expert witness testified that the tests ordered by Dr. Mena were appropriate and the examination performed by Dr. Mena was thorough. After completion of the examination, Dr. Mena recommended that Appellant be admitted to the hospital and referred him to the care of Dr. Murray Vann (Dr. Vann), a urologist who specializes in the treatment of kidney stones. Appellant's expert testified that this decision was appropriate. Appellant's expert's criticism of the treatment provided by Dr. Mena "simply is that he didn't consult the general surgeon when he had a patient that came in with a constellation set of symptoms which could not rule out appendicitis."

Appellee Dr. Vann, a urologist, admitted Appellant to the hospital after midnight on April 17, 1995. Dr. Vann examined Appellant and did not find any symptoms that were inconsistent with a kidney stone or which alerted him to the existence of appendicitis. As confirmed by Appellant's expert, Appellant lacked the classic symptoms of appendicitis. While in the hospital on the afternoon of April 18, 1995, Appellant had a significant change in his symptoms. Dr. Vann requested that Dr. Antonio Davalos, a general surgeon, be consulted regarding the Appellant's condition. Dr. Davalos examined Appellant in the early evening of April 18, 1995. He found that Appellant had peritonitis, or an infection and inflammation of the abdomen which required immediate surgery. Surgery was performed within an hour of Dr. Davalos's consultation. Prior to the surgery, Dr. Davalos had diagnosed the patient with acute abdomen but did not specifically diagnose appendicitis. Appellant's expert had no criticism of the care provided by Dr. Davalos. Appellant developed postoperative complications that included sepsis and wound infection. He remained in the hospital for a total of nine days.

## II. DISCUSSION

### A. Standard of Review

In two issues, Appellant asserts that the trial court erred in granting a directed verdict in favor of all defendants because there was sufficient evidence presented to raise a fact issue as to a breach of the standard of care and as to causation.

In reviewing a directed verdict, we examine the evidence in the light most favorable to the party suffering the adverse judgment and disregard all contrary evidence and inferences. *S.V. v. R.V.*, 933 S.W.2d 1, 8 (Tex.1996); *Qantel Bus. Sys. v. Custom Controls Co.*, 761 S.W.2d 302, 303–04 (Tex.1988); *McIntyre v. Smith*, 24 S.W.3d 911, 914 (Tex.App.-Texarkana 2000, pet. denied). If there is any conflicting evidence of probative value which raises a material fact issue, then the judgment must be reversed and the case remanded for the jury's determination of that issue. *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex.1994); *Qantel*, 761 S.W.2d at 304; *McIntyre*, 24 S.W.3d at 914; *see also Campos v. Ysleta General Hosp., Inc.*, 836 S.W.2d 791, 793 (Tex.App.-El Paso 1992, writ denied). When reasonable minds may differ as to the truth of controlling facts, the issue must go to the jury. *McIntyre*, 24 S.W.3d at 914; *Phippen v. Deere and Co.*, 965 S.W.2d 713, 719 (Tex.App.-Texarkana 1998, no pet.). On the other hand, where no evidence of probative force on an ultimate fact element exists, or where the probative force of slight testimony is so weak that only a mere surmise or suspicion is raised as to the existence of essential facts, the trial court has the duty to instruct the verdict. *McIntyre*, 24 S.W.3d at 914; *Facciolla v. Linbeck Constr. Corp.*, 968 S.W.2d 435, 440 (Tex.App.-Texarkana 1998, no pet.); *Campos*, 836 S.W.2d at 793–94.

Such a determination requires us to consider only the evidence that favorably supports Appellant's position. All contrary evidence and inferences are to be disregarded. *Campos*, 836 S.W.2d at 793; *Valdez v. Lyman–Roberts Hosp. Inc.*, 638 S.W.2d 111, 114 (Tex.App.-Corpus Christi 1982, writ ref'd n.r.e.).

To prevail in any medical negligence cause of action, the trier of fact must be guided by the opinion testimony of experts. *Hart v. Van Zandt*, 399 S.W.2d 791, 792 (Tex.1966); *McIntyre*, 24 S.W.3d at 914–15. Through this expert testimony, the plaintiff must prove:

(1) a duty by the physician to act according to a certain standard of care;

(2) a breach of that standard of care;

(3) an injury; and

(4) a causal connection between the breach of care and the injury.

*McIntyre*, 24 S.W.3d at 914; *McCombs v. Children's Med. Ctr. of Dallas*, 1 S.W.3d 256, 259 (Tex.App.-Texarkana 1999, pet. denied).

It is well established that the threshold question in a medical malpractice case is the standard of care. *McIntyre*, 24 S.W.3d at 914; *Hammonds v. Thomas*, 770 S.W.2d 1, 1 (Tex.App.-Texarkana 1989, no writ). That standard must first be established so that the fact finder can determine if the doctor's conduct deviated from the standard to the degree that it constituted malpractice. *McIntyre*, 24 S.W.3d at 914; *Hammonds*, 770 S.W.2d at 1–2. It is not sufficient for a medical expert to simply state that he knows the standard of care and to then draw a conclusion as to whether that standard was met. Rather, the expert must explicitly state the standard of care and explain how the defendant's acts met or failed to meet that standard. *McIntyre*, 24 S.W.3d at 915; *Whittley v. Heston*, 954 S.W.2d 119,

122 (Tex.App.-San Antonio 1997, no writ); *Chopra v. Hawryluk,* 892 S.W.2d 229, 233 (Tex.App.-El Paso 1995, writ denied).

### B. Discussion of the Evidence

An analysis of both issues in light of the above standard of review reveals two dispositive issues on appeal. Appellant has asserted that he has raised a fact issue as to the negligence of the physician Appellees for medical malpractice with regard to their failure to timely consult a general surgeon to rule out a diagnosis of appendicitis. The second issue asserts that Appellant has produced evidence to show that his injuries were proximately caused by the Appellees' failure to diagnose appendicitis and remove the appendix before it ruptured.

Because this case involves allegations of medical malpractice, we must evaluate the evidence in light of the burden of proof required to prove medical malpractice. In a medical malpractice case, the plaintiff must prove, by competent testimony, that the defendant's negligence proximately caused the plaintiff's injury. *Hart,* 399 S.W.2d at 792; *Bowles v. Bourdon,* 148 Tex. 1, 5, 219 S.W.2d 779, 782 (1949). Additionally, and of great importance in this case, the plaintiff must establish a causal connection beyond the point of conjecture; proof of mere possibilities will not support the submission of an issue to the jury. *Duff v. Yelin,* 751 S.W.2d 175, 176 (Tex.1988); *Lenger v. Physician's Gen. Hosp., Inc.,* 455 S.W.2d 703, 706 (Tex.1970).

The record on appeal consists only of the testimony of Appellant's physician expert witness, Dr. Terry Simpson. Dr. Simpson repeatedly asserted that his only criticism of the physician defendants was that they did not immediately consult a general surgeon to rule out appendicitis. Specifically, with regard to Dr. Mena, Dr.

Simpson testified that "the criticism simply is that he didn't consult the general surgeon when he had a patient that came in with a constellation set of symptoms which could not rule out appendicitis."

There is no dispute that Appellant presented to the emergency room of the defendant hospital on the evening of April 16, 1995 with general, non-specific symptoms of temperature, tenderness, and general abdominal pain and a history of kidney stones. Dr. Simpson confirmed that Dr. Mena did an extensive workup in the emergency room and a thorough evaluation of Appellant's complaints. He also acknowledged that Dr. Mena did a workup that included tests that were not related to the patient's history of kidney stones and specifically included the evaluation of other potential problems. He had no criticism of the tests requested and Appellant did in fact have a kidney stone. Dr. Simpson also confirmed that the symptoms of a kidney stone can be identical to the symptoms of appendicitis. He also confirmed that it was appropriate for Dr. Mena to admit the patient into the hospital under the care of Dr. Vann for treatment of the kidney stone. Dr. Mena had no further responsibility for the care or treatment of Appellant after he was admitted to the hospital. Dr. Simpson also testified that Appellant had a significant change in his symptoms and his clinical presentation on the afternoon of April 18, 1995.

Dr. Simpson's criticism of Dr. Vann is also limited to his failure to consult a general surgeon earlier in the patient's treatment. Dr. Simpson repeatedly testified that he considered Dr. Vann's assessment of Appellant's condition as "elegant" and thorough. He acknowledged that Dr. Vann evaluated Appellant's condition and considered other potential problems, not just the confirmed kidney stone. Dr. Simpson confirmed that a diagnosis of a

kidney stone does not necessarily require the consultation of a general surgeon and that the patient did not present with the classic symptoms of appendicitis.

Dr. Simpson confirmed that the defendant physicians did not cause the appendicitis, did not cause it to rupture, and did not cause the Appellant to undergo surgery. He also confirmed that the appropriate type of surgery was an exploratory laparotomy rather than laparoscopic surgery because of the type of symptoms presented. Significantly, on cross-examination, Dr. Simpson testified that medicine is not an exact science and that reasonable medical minds can come to different conclusions about a diagnosis and a course of treatment for a patient. He acknowledged that reaching a different conclusion is not negligence nor below the appropriate standard of care. Further, he acknowledged that in the past, he had been wrong in his initial assessment of a patient, had in fact seen patients with abdominal pain and not immediately operated, and had waited a day or two and operated to find a ruptured appendix. This process was, in his opinion, not negligence nor below the standard of care. Dr. Simpson also testified that in about 40 percent of the cases, the appendix is not located in the normal location and a patient may present with atypical symptoms. He confirmed that in this case, the patient's symptoms were consistent with a variety of intra-abdominal problems.

Once the patient's condition changed, a general surgeon was consulted. The general surgeon diagnosed the patient with "acute abdomen" for which the appropriate treatment was exploratory surgery to address the problem. Notably, the general surgeon did not diagnose the appendicitis until after the surgery had occurred. Reviewing this testimony as a whole does not establish that the diagnostic process followed by the Appellee physicians was in fact deficient in any way or failed to meet the appropriate standard of care. We overrule Appellant's Issue One.

■ Appellant also asserts that he has presented evidence of causation of his injuries. As stated previously, there is no question that the physicians did not cause the appendicitis, the rupture, or the need for surgery. Appellant's contention is only that the complications he suffered were caused by the physicians' negligence. Dr. Simpson testified that he had no criticism of the way that the general surgeon had performed the surgery and that open surgery was appropriate. Further, he acknowledged that an operation on a non-ruptured appendix or a normal appendix may result in a wound infection and have complications though the rate is higher for a ruptured appendix. Significantly, he presented no evidence to support Appellant's contention that the medical complications would not have occurred but for the actions of the Appellee physicians. To the contrary, the only evidence presented was that the type of complications that Appellant suffered may occur after removal of a non-ruptured appendix and that with an earlier consultation and surgery, Appellant "most likely would not have had a wound infection."

■ Dr. Simpson's testimony amounted to, at most, speculation that if the surgery had been performed earlier, Appellant might not have suffered from the complications of sepsis and wound infection. Speculation on the part of an expert does not create evidence of negligence or the violation of a standard of care. Dr. Simpson's testimony is precisely the type of 20/20 hindsight analysis which does not provide a factual basis for evidence of negligence in the standard of care for the treatment of Appellant or any evidence of causation of Appellant's injuries. Opinion testimony based upon conjecture or specu-

lation lacks probative value and does not support a finding of medical malpractice. *See Williams v. Gaines*, 943 S.W.2d 185, 193 (Tex.App.-Amarillo 1997, writ denied). We overrule Issue Two.

Applying these settled principles of law to the facts of this case, it is clear that the trial court correctly granted the instructed verdict in favor of both physician defendants. We overrule both Appellant's issues.

Having overruled Appellant's issues on review, we affirm the judgment of the trial court.