

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| DAMON CHAPPELL AND KIMBERLY CHAPPELL, | § | No. 08-11-00200-CV |
| | § | |
| Appellants, | § | Appeal from the |
| | § | 210th District Court |
| v. | § | of El Paso County, Texas |
| WILLIAM ALLEN D/B/A DOUBLE A SETTERS AND WILLIAMS SCOTSMAN, INC., | § | (TC# 2006-4510) |
| | § | |
| Appellees. | § | |

**O P I N I O N**

Appellants Damon and Kimberly Chappell (the Chappells) sued Appellees, William Allen, doing business as Double A Setters (Double A), and Williams Scotsman, Inc. (Scotsman) after an air-conditioning unit fell on Damon Chappell from Scotsman's mobile office unit (MOU), which Double A had recently refurbished while the MOU was on the Chappells' property. The Chappells appeal the trial court's partial grant of Scotsman's and Double A's motions for summary judgment, its entry of a directed verdict on the surviving negligent activity cause of action, and other matters. We affirm.

**BACKGROUND**

*Factual Summary*

Scotsman purchases used MOUs, has them refurbished, and then sells or leases them.

Scotsman owned the MOU at issue and engaged Damon Chappell's business, Chappell's Mobile Home Service (CMHS), to make the MOU road-ready and safe for transport, to transport the MOU from Houston to El Paso, and to ensure that nothing fell off of the MOU during its transport to El Paso. Chappell's driver was required to make pre-trip and en route inspections and, upon arrival at Chappell's lot in El Paso, was to park the MOU and put stands under it. Scotsman also contracted with Damon Chappell to use his property in El Paso as a staging area where the MOU could be renovated. Scotsman was not involved in CMHS's transportation of the MOU, and Damon Chappell never informed Scotsman of any problems with the MOU.

Scotsman hired Double A to refurbish the MOU into a classroom while it was parked at Damon Chappell's lot in El Paso. Double A's scope of work included modification of the MOU into two classroom units through the removal of closets, bathrooms, and other structures and the placement of a dividing wall. However, Double A's scope of work did not include inspection, removal, replacement of, or work on the air conditioning unit. Scotsman had no supervisory control over Double A, did not perform any of the renovation work involved, nor was involved with Double A's refurbishing of the MOU. Scotsman's only control in the refurbishment process involved directing Double A regarding what needed to be accomplished and inspecting the MOU on completion to determine if Double A's work had been accomplished in an adequate manner. Double A was tasked with timely completion of the work, set its own hours, provided its own tools, and provided its own workers. Double A's on-site supervisor, Mike Munselle, directed and supervised Double A's workers. Scotsman agreed to pay Double A a flat fee after completion of its work and issued a Form 1099 to Double A for the amount it paid for the work.

Double A completed its refurbishment of the MOU and vacated Chappell's property on or

about October 12, 2004. Approximately one week later, as Damon Chappell attempted to retrieve one of his dogs from under the MOU, an air-conditioning unit mounted on the side of the MOU fell and seriously injured Damon Chappell.

The Chappells sued Appellees claiming negligence, gross negligence, premises liability, negligent activity, negligent hiring and supervision, and breach of contract. The trial court granted Appellees' summary judgment motions on all of the Chappells' claims other than the negligent activity claim, which was tried before a jury. Prior to submission of the case to the jury and after the close of all evidence, the trial court directed verdict for Appellees on the only remaining claim of negligent activity. The trial court thereafter denied Appellants' motion for new trial.

## DISCUSSION

The Chappells present seven issues for our consideration. We address each issue as follows.

*Summary Judgment*

Scotsman and Double A each filed hybrid motions for summary judgment on both no-evidence and traditional grounds as to all of the Chappells' causes of action and claims for punitive damages. The trial court denied the motions on the negligent activity cause of action and granted the motions on the remaining causes of action and claims. In Issue Six, the Chappells appeal only the trial court's grant of summary judgment on their premises liability cause of action.

We initially consider the adequacy of the Chappells' briefing of Issue Six. Scotsman contends the Chappells have waived this issue by failing to properly cite to the record in compliance with Rule 38.1(i) (requiring clear and concise argument and appropriate citation to

3

authorities and the record). TEX. R. APP. P. 38.1(i). Scotsman also argues that we have no duty or right "to search the voluminous 700-page summary judgment record to evaluate [the] Chappells' argument[,]" and that our independent review of the record would improperly transform this Court from neutral adjudicators to advocates. *See Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex.App. – El Paso 2007, no pet.) (appellant bears the burden of establishing the trial court committed reversible error and a reviewing court has no duty or right to perform independent review of the record and applicable law to determine whether there was such error because in doing so, the court abandons its role as a neutral adjudicator and becomes an advocate).

We agree that the Chappells often cite exclusively to testimony and evidence presented during the trial of the negligent activity claim rather than to evidence in the summary judgment record. The Chappells have also failed to provide authority in support of their recitation of the elements of invitee and licensee premises liability claims. They have failed to identify the pages in the trial record which they incorporate by reference and by which they purport to present a response to Appellees' traditional summary judgment motions. TEX. R. APP. P. 38.1(g), (i).

The scope of our review is limited to the summary judgment record upon which the trial court's ruling was based. *Garcia v. BNSF Ry. Co.*, 387 S.W.3d 763, 766 (Tex.App. – El Paso 2012, no pet.); *Young v. Gumfory,* 322 S.W.3d 731, 738 (Tex.App. – Dallas 2010, no pet.); *Mathis v. Restoration Builders, Inc.*, 231 S.W.3d 47, 52 (Tex.App. – Houston [14th Dist.] 2007, no pet.) (review of summary judgment is limited to consideration of the evidence presented to the trial court); *see also* TEX. R. CIV. P. 166a(c) (no oral testimony may be considered in support of a motion for summary judgment). Therefore, in addressing Issue Six, we restrict our review to the evidence to which the Chappells have properly directed us and consider only that evidence which

4

was before the trial court at the time it ruled on Appellees' summary judgment motions and refrain from considering evidence adduced at trial. We also do not conduct an independent review of the voluminous summary judgment record.

*Standard of Review*

Our review of a summary judgment is *de novo*. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). When a summary judgment fails to specify the grounds upon which the trial court relied for its ruling, we may affirm the judgment if any of the grounds advanced is meritorious. *Vasquez v. Southern Tire Mart, LLC*, 393 S.W.3d 814, 817 (Tex.App. – El Paso 2012, no pet.).

When a party files a hybrid summary judgment motion on both no-evidence and traditional grounds, we first review the trial court's judgment under the no-evidence standard of review. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *All American Telephone, Inc. v. USLD Communications, Inc.*, 291 S.W.3d 518, 526 (Tex.App. – Fort Worth 2009, pet. denied); *East Hill Marine, Inc. v. Rinker Boat Co.*, 229 S.W.3d 813, 816 (Tex.App. – Fort Worth 2007, pet. denied). If the non-movant failed to produce more than a scintilla of evidence under the no-evidence summary judgment provisions of Rule 166a(i), then there is no need to analyze whether the movant's summary judgment proof satisfied the less stringent burden set forth for traditional summary judgment under Rule 166a(c). TEX. R. CIV. P. 166a(c) & (d); *East Hill Marine, Inc.*, 229 S.W.3d at 816.

A no-evidence motion for summary judgment under Rule 166a(i) is essentially a motion for a pretrial directed verdict. TEX. R. CIV. P. 166a(i); *Timpte Industries, Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). After an adequate time for discovery, a party without the burden of proof

may, without presenting evidence, seek summary judgment on the ground that there is no evidence to support one or more essential elements of the non-movant's claim or defense. TEX. R. CIV. P. 166a(i); *All American Telephone, Inc.*, 291 S.W.3d at 526. The motion must specifically state the elements for which there is no evidence. TEX. R. CIV. P. 166a(i); *Timpte Industries, Inc.*, 286 S.W.3d at 310; *All American Telephone, Inc.*, 291 S.W.3d at 526. The Supreme Court has explained that Texas Rule of Civil Procedure 166a(i) does not permit conclusory or general no-evidence challenges. *Timpte Industries, Inc.*, 286 S.W.3d at 310. This requirement serves the purposes of providing adequate information to the opposing party by which it may oppose the motion and defining the issues to be considered for summary judgment. *Timpte Industries, Inc.*, 286 S.W.3d at 311, *quoting Westchester Fire Ins. Co v. Alvarez*, 576 S.W.2d 771, 772 (Tex. 1978). The trial court is required to grant the motion unless the non-movant produces summary judgment evidence that raises a genuine issue of material fact. TEX. R. CIV. P. 166a(i).

In conducting our no-evidence summary judgment review, we review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, credit evidence favorable to that party if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Timpte Industries, Inc.*, 286 S.W.3d at 310, *quoting Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). When a non-movant presents more than a scintilla of probative evidence that raises a genuine issue of material fact, a no-evidence summary judgment is improper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009).

The party moving for traditional summary judgment bears the burden of showing that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. TEX. R.

6

Civ. P. 166a(c). To determine if the non-movant raises a fact issue, we review the evidence in the light most favorable to the non-movant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *See Fielding*, 289 S.W.3d at 848, *citing City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). A defendant who conclusively negates a single essential element of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment on that claim. *Frost Nat. Bank v. Fernandez*, 315 S.W.3d 494, 508-09 (Tex. 2010).

*Premises Liability*

The threshold question in a premises liability case, as with any cause of action based on negligence, is the existence of and violation of a duty. *Strunk v. Belt Line Road Realty Co.*, 225 S.W.3d 91, 98 (Tex.App. – El Paso 2005, no pet.). In a premises liability action, the duty owed by a premises owner is determined by the status of the complaining party at the time and place of injury. *Scott & White Mem'l Hosp. v. Fair*, 310 S.W.3d 411, 412 (Tex. 2010); *Greater Houston Transportation Company v. Phillips,* 801 S.W.2d 523, 525 (Tex. 1990); *Forester v. El Paso Elec. Co.*, 329 S.W.3d 832, 837 (Tex.App. – El Paso 2010, no pet.).

An invitee is a person who enters the premises of another at the express or implied invitation of the owner or occupier for their mutual benefit. *Forester*, 329 S.W.3d at 837; *Braudrick v. Wal–Mart Stores, Inc.*, 250 S.W.3d 471, 476 (Tex.App. – El Paso 2008, no pet.); *Wong v. Tenet Hospitals, Ltd.*, 181 S.W.3d 532, 537 (Tex.App. – El Paso 2005, no pet.). The elements of a premises liability cause of action when the injured party is an invitee are: (1) actual or constructive knowledge of a condition on the premises by the owner or occupier; (2) that the condition posed an unreasonable risk of harm; (3) that the owner or occupier did not exercise

7

reasonable care to reduce or eliminate the risk; and (4) that the owner's or occupier's failure to use such care proximately caused the plaintiff's injury. *See CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99-100 (Tex. 2000) (invitee premises liability); *see also Braudrick*, 250 S.W.3d at 476; *Strunk v. Belt Line Road Realty Co.,* 225 S.W.3d 91, 100 (Tex.App. – El Paso 2005, no pet.). An owner or occupier owes an invitee the duty to keep the property safe and must use reasonable care to protect the invitee from a condition on the land that creates an unreasonable risk of harm of which the owner or occupier knew or by the exercise of reasonable care would have discovered. *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 101 (Tex. 2000); *Braudrick*, 250 S.W.3d at 476.

In the absence of a relationship that inures to the mutual benefit of the entrant and the owner, an entrant is considered a licensee. *Forester*, 329 S.W.3d at 837; *Montes v. Indian Cliffs Ranch, Inc.*, 946 S.W.2d 103, 105 (Tex.App. – El Paso 1997, pet. denied). A licensee is a person who is privileged to enter and remain on another's premises by express or implied permission of the owner, and not by any express or implied invitation. *Wong v. Tenet Hosp. Ltd.*, 181 S.W.3d 532, 537 (Tex.App. – El Paso 2005, no pet.). When compared, a lower standard of care is due to a licensee than to an invitee. *See Osadchy v. Southern Methodist University*, 232 S.W.3d 844, 852 (Tex.App. – Dallas 2007, pet. denied), *citing Wong*, 181 S.W.3d at 537. A landowner or occupier is liable to a licensee only if the owner or occupier has actual knowledge of the condition that injured the plaintiff. *Wong*, 181 S.W.3d at 537. A licensee is not entitled, however, to expect that the possessor of the premises will warn him of conditions that are perceptible to the licensee, or the existence of which can be inferred from facts within the licensee's present or past knowledge. *Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003). In order to establish premises liability, a licensee must prove: (1) a condition of the premises created an

unreasonable risk of harm to the licensee; (2) the licensor actually knew of the condition; (3) the licensee did not actually know of the condition; (4) the licensor failed to exercise ordinary care to protect the licensee from danger; and (5) the licensor's failure was a proximate cause of injury to the licensee. *State Dept. of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 237 (Tex.1992) (op. on reh'g); *see also City of Dallas v. Thompson,* 210 S.W.3d 601, 603 (Tex.2006) (per curiam); *Wyckoff v. George C. Fuller Contracting Co.*, 357 S.W.3d 157, 164 (Tex.App. – Dallas 2011, no pet.). One who does not own, occupy, or control premises may owe a duty of due care, if he undertakes to make the premises safe for others. *See Wilson v. Texas Parks & Wildlife Dep't,* 8 S.W.3d 634, 635 (Tex. 1999) (per curiam).

*Analysis*

First, while no party presents authority regarding the definition of "premises," we observe that courts have defined "premises" as a building or a part of a building with its grounds or other appurtenances. *See Billstrom v. Memorial Medical Center*, 598 S.W.2d 642, 646 (Tex.Civ.App. – Corpus Christi 1980, no writ); *Brown v. State Dep't of Transportation*, 80 S.W.3d 594, 598 (Tex.App. – Corpus Christi 2000, no pet.). It is undisputed that the Chappells owned the grounds or land and that Scotsman owned the MOU located on the Chappells' land.

*The Chappells' Contentions on Appeal*

In conducting our review of the summary judgment, we are required to review the evidence as presented by the motions and the response filed. *See Timpte Industries, Inc.*, 286 S.W.3d at 310. However, the Chappells have presented us with a number of propositions and arguments supported by a wide range of evidence consisting of testimony and documents without always referencing the evidence before the trial court at the summary judgment proceeding.

9

First, the Chappells argue that "[i]t is clear that because Damon Chappell, at the time of the incident, was patrolling the entire property to secure it for the night, which included the Premises solely occupied by the defendants' MOU," and in support direct us to Damon Chappell's deposition testimony that he walked his dogs, that he inspected his yard daily for dangerous conditions but had never inspected "that unit," and that, while attempting to retrieve one of his dogs from under the MOU, "something" hit him in the head. Additionally, the Chappells direct us to: (1) one page of the District Clerk's docket sheet without explanation of its significance; (2) the recitation of legal arguments contained in motions and responses but not to evidence that may be a part of such filings; (3) a description of the manner in which the "cage" is secured to the MOU by means of screws placed into the frame around the cage; (4) testimony that the driver or transporter of the MOU is responsible if something falls off of it; (5) testimony that Double A has had difficulty finding work after it was sued; and (6) a portion of the trial record.[1]

The Chappells next contend that it was Scotsman's failure "to determine what had to be done to the MOU to make it ready for use as a classroom . . . which created or perpetuated the condition, such as the failure to inspect the MOU and to remove the rotten wood around the air conditioner which contributed to the movement of the support cabinet." By affidavit, CMHS's office manager, Christie Norbisrath, presented testimony that in her previous deposition she had testified that CMHS employees had inspected the MOUs "before they came in," that she was of the opinion that the walls were not in good condition, that the paneling was loose and not connected to the wall where it should have been nailed down, that she knew Double A had worked on the wall around the air conditioner, and that she believed that Double A replaced a piece of paneling "over the rotted wood and put the air conditioner back, [but] they didn't put them all back in." She also

---

[1] The next four pages of the Chappells' brief contain citation to the trial record alone.

stated that she had testified during her deposition that if ten screws were "missing from the outside of the unit that it would not be considered to be roadworthy." Without specifying the relevance of the evidence contained therein, the Chappells also direct us to: (1) a range of nine pages of Norbisrath's testimony about her prior deposition;[2] (2) a blank page in the clerk's record; and (3) exhibits from the deposition of Double A's employee Mike Munselle, which include photographs, an invoice from Double A to Scotsman, and a Scotsman inspection sheet. However, the Chappells do not provide any analysis regarding this evidence and fail to identify how the evidence is relevant in our review of the summary judgment.

Finally, the Chappells assert that the air conditioner would have fallen "even without the movement of the support cabinet" because, as the Chappells' expert Jahan Rasty, Ph.D had explained, "the tabs in the support cabinet were bent . . . as a result of improper placement of the air conditioner within its support cabinet." According to the Chappells' expert, the condition of the wall did not cause the air-conditioning unit to fall; rather, it fell because of the tabs, a condition which did not arise until after the MOU had been delivered to El Paso. However, rather than citing us to the page where the "improper placement of the air conditioner" evidence may be located, the Chappells cite to the entirety of Dr. Rasty's twenty-seven page affidavit, and direct us to the trial record and trial exhibits rather than to the summary judgment record. The remaining citations to the summary judgment record direct us to Appellees' motions for summary judgment, but not to any evidence in their summary judgment response which would support the Chappells' arguments.

*Scotsman's Motion*

---

[2] The affidavit refers to portions of the witness's deposition testimony; however, the Chappells have not directed us to the deposition testimony whereby we may fully consider the questions posed and answers given.

11

In its no-evidence motion for summary judgment, Scotsman first asserted that it was not an occupier or possessor of the premises and that Damon Chappell was the occupier or possessor of the premises. If deemed to be an occupier of the premises, Scotsman contended that it was not liable for personal injury to Damon Chappell under Section 95.003 of the Texas Civil Practice and Remedies Code.[3] TEX. CIV. PRAC. & REM. CODE ANN. § 95.003 (West 2005) (Liability for Acts of Independent Contractors). Scotsman also argued that it was entitled to summary judgment because the Chappells presented no evidence that Scotsman exercised or retained some control over the manner in which the work was performed by Chappell or Double A, other than the right to order the work to start or stop, to inspect progress, and to receive reports, nor that it had actual knowledge of any danger or condition resulting in the injury as alleged by the Chappells.

Scotsman next asserted that the Chappells, as plaintiffs, were required, but failed, to affirmatively establish that Damon Chappell, as a licensee, lacked knowledge of the danger, either independently or through his employees. To establish "licensee" premises liability, a licensee must prove, among other things, that the licensee had no actual knowledge about the alleged dangerous condition. *Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003).

Portions of Damon Chappell's video-deposition transcript were provided as evidence in support of the motions for summary judgment and of Chappells' response thereto. In his deposition, Damon Chappell testified that he had seen air-conditioning units fall out of MOUs before and explained that the bouncing of the unit during transport may cause the sleeve to come

---

[3] Under Section 95.003, a property owner is not liable for personal injury to a contractor or an employee of a contractor who constructs, repairs, renovates, or modifies an improvement to real property, including personal injury arising from the failure to provide a safe workspace unless: (1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect or receive report; and (2) the property owner had actual knowledge of the danger or condition resulting in the personal injury and failed to adequately warn. TEX. CIV. PRAC. & REM. CODE ANN. § 95.003 (West 2005).

loose.[4]  He acknowledged that Scotsman paid him $300 to make the MOU road worthy and that his driver, Jose Matamoros, performed an inspection of the MOU, including the air-conditioning unit.  He also stated that he knew the MOU was damaged and was going to be repaired while stored on his lot, and acknowledged that his employee had looked at and observed the sleeve that held the air conditioner to the MOU and had strapped it.  When asked what he meant, Damon Chappell clarified, "[I]f you think you're going to have a problem . . . you take a strap, and you go completely over the unit and you strap it together . . . ."

Damon Chappell denied knowing that anything was wrong with the air-conditioning sleeve at the time of or prior to the accident or why the air-conditioning unit fell.  The Chappells' expert, Dr. Rasty, also testified that he did not know what caused the air conditioning unit to slide out of its cabinet.

### Double A's Motion

In its no-evidence summary judgment motion, Double A argued that the Chappells owned the premises and are, at best, licensees in relation to the MOU.  It argued that it was entitled to summary judgment because the Chappells had presented no evidence to show that Double A was a possessor of the premises, that a condition on the premises posed an unreasonable risk of harm, or that Double A had actual knowledge of the danger.

### MSJ Conclusion

The Chappells present no evidence that Williams Scotsman had actual knowledge of an alleged unreasonably dangerous condition or that Damon Chappell did not have such knowledge as required for a licensee premises liability claim.  The affidavit provided by CMHS's office

---

[4] Damon Chappell does not specify whether the term "unit" is a reference to the air-conditioning unit or the mobile office unit.

13

manager establishes that a CMHS employee had knowledge that there was rotten wood covered by panels of the MOU. *See Pitts v. Winkler County*, 351 S.W.3d 564, 571 (Tex.App. – El Paso 2011, no pet.) (licensee premises liability for governmental unit). Nor do the Chappells present evidence that Scotsman had constructive knowledge of an unreasonably dangerous condition on the premises also, as required for an invitee premises liability claim. *CMH Homes, Inc.*, 15 S.W.3d 97, 99 (Tex. 2000). There is no evidence that Scotsman, as owner, occupied or controlled the mobile unit at the time of Damon Chappell's injury. Nor do the Chappells present evidence that a reasonable inspection by Scotsman would have revealed that the unit was no longer safe. *Id*. at 102.

There is no evidence that Scotsman exercised control over the refurbishment work performed by Double A beyond identifying the work to be performed. The Chappells fail to present evidence that Scotsman or Double A actually or constructively knew of a condition that posed an unreasonable risk of harm. The summary judgment evidence unequivocally establishes that Double A had finished work on the MOU approximately one week before the accident and the Chappells cannot show that Double A, as independent contractor and non-owner controlled or occupied the MOU at the time of the injury. Moreover, the evidence before the trial court was that Double A did not and was not asked or required, by Scotsman or anyone else, to repair, remove, replace, or otherwise work on the air-conditioning unit.

Whether Damon Chappell was an invitee or a licensee, the summary judgment record contains no evidence which satisfies the requirements of knowledge by Scotsman and Double A or the lack of knowledge by Chappell for a premises liability cause of action. The Chappells' premises liability claim fails as a matter of law. Because the Chappells failed to present more

14

than a scintilla of probative evidence in response to the summary judgment motions that raised a genuine issue of material fact on the aforementioned premises liability elements, the trial court properly granted summary judgment on the premises liability claim. *See Smith*, 288 S.W.3d at 424. Issue Six is overruled.

*Directed Verdict*

In Issue Seven, the Chappells complain that the trial court improperly directed verdict for Appellees on the Chappells' claims of negligence and negligent hiring and supervision. Yet, the main focus of the Chappells' directed verdict complaint is on their premises liability claim. We note that at the summary judgment hearing, the trial court expressly denied each Appellee's motion for summary judgment as to the Chappells' negligent activity claim and granted Appellees' summary judgment motions "as to all other claims and causes of action" and specified that Appellants' suit would proceed only on the negligent activity theory. Because Appellants' negligent activity claim was the only remaining cause of action at trial, the trial court could not have erred in directing verdict on the Chappells' negligent hiring and supervision or premises liability claims as the Chappells assert. The directed verdict was granted on the only cause of action tried, the negligent activity claim. We restrict our analysis accordingly.

*Standard of Review*

The trial court may direct a verdict when the plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery or when the plaintiff admits or the evidence conclusively establishes a defense to the plaintiff's cause of action. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.,* 29 S.W.3d 74, 77 (Tex. 2000). In reviewing a directed verdict, we decide whether there is any evidence of probative value to raise an issue of material fact on the

15

question presented, and we review the evidence in the light most favorable to the person suffering the adverse judgment. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 220 (Tex. 2011), *citing Bostrom Seating, Inc. v. Crane Carrier Co.,* 140 S.W.3d 681, 684 (Tex. 2004) (citation omitted); *S.V. v. R.V.,* 933 S.W.2d 1, 8 (Tex. 1996); *Qantel Bus. Sys. v. Custom Controls Co.,* 761 S.W.2d 302, 303–04 (Tex. 1988); *Moreno v. M.V*, 169 S.W.3d 416, 420 (Tex.App. – El Paso 2005, no pet.). If there is any conflicting evidence of probative value which raises a material fact issue, then the judgment must be reversed and the case remanded for the jury's determination of that issue. *Szczepanik v. First S. Trust Co.,* 883 S.W.2d 648, 649 (Tex.1994); *Qantel Bus. Sys.,* 761 S.W.2d at 304; *Moreno*, 169 S.W.3d at 420; *see also Campos v. Ysleta General Hosp., Inc.,* 836 S.W.2d 791, 793 (Tex.App. – El Paso 1992, writ denied). When reasonable minds may differ as to the truth of controlling facts, the issue must go to the jury. *Moreno*, 169 S.W.3d at 420; *McIntyre v. Smith,* 24 S.W.3d 911, 914 (Tex.App. – Texarkana 2000, pet. denied). Where no evidence of probative force on an ultimate fact element exists, or where the probative force of slight testimony is so weak that only a mere surmise or suspicion is raised as to the existence of essential facts, the trial court has the duty to instruct the verdict. *Moreno*, 169 S.W.3d at 420; *Campos,* 836 S.W.2d at 793–94.

*Analysis*

To establish their negligent activity claim, the Chappells were required to establish that Damon Chappell was injured as a result of some activity being performed by Scotsman or Double A contemporaneous with the injury. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) ("A negligent activity claim requires that the claimant's injury result from a contemporaneous activity itself rather than from a condition created on the premises by the activity[.]"); *Keetch v. Kroger*

16

*Co.*, 845 S.W.2d 262, 264 (Tex. 1992) (recovery on a negligent activity theory requires that plaintiff be harmed by or as a contemporaneous result of the activity itself). However, the evidence at trial failed to show that Scotsman was engaged in any contemporaneous activity that resulted in Damon Chappell's injury and establishes that Scotsman did not participate in either the transportation of the MOU, which was Damon Chappell's task, nor in the refurbishing of the MOU, which was Double A's job. Moreover, there was no evidence to establish that Scotsman owed Damon Chappell a duty to remove the MOU immediately from the staging site or that liability for personal injury arose from the failure to abide by an agreed-to timely removal of the MOU.

The evidence at trial established that Double A had completed its refurbishing responsibilities and vacated the premises one week before Damon Chappell was injured. The evidence established that Double A's duties were limited to refurbishing the MOU though the removal of structures and insertion or construction of a dividing wall within the MOU and did not involve or implicate the MOU's air-conditioning unit. The Chappells' expert testified at trial that he believed the air-conditioning unit was improperly placed within its supporting enclosure and that the walls and paneling of the MOU did not contribute to the falling of the air-conditioning unit. Because there is no probative evidence that Damon Chappell was injured as a result of some contemporaneous activity being performed by Scotsman or Double A and no probative evidence that either engaged in any activity that proximately caused Damon Chappell's injury, the trial court did not err in directing the verdict in favor of Scotsman and Double A. Issue Seven is overruled.

We address Issues Two, Three, Four, and Five together. In Issue Two, the Chappells assert that the trial court improperly "sanitized" the record when it refused to allow evidence of a

17

letter regarding Damon Chappell's disability which was previously admitted into evidence at an earlier default hearing which took place before Double A had filed its answer. In Issue Three, they argue that the trial court erred by ruling that Damon Chappell's disability finding by the Social Security Administration was not relevant and contend that the court's instruction to the jury to disregard Damon Chappell's testimony that he was disabled constituted another "sanitizing" of the record. In Issue Four, the Chappells complain that the trial court erred by directing their trial counsel to refrain from discussing the facts of the case in voir dire or asking questions which included the facts of the case. In Issue Five, the Chappells contend the trial court violated the Code of Judicial Conduct and displayed bias and prejudice toward them.[5]

Because the case was removed from the jury's consideration and correctly decided by the trial court, as a matter of law, we need not address the evidentiary complaints because any error was harmless. *See* TEX. R. APP. P. 44.1(a)(1) (no judgment may be reversed on appeal unless the trial court made an error of law and that error "probably caused the rendition of an improper

---

[5] We note that the Texas Supreme Court has recognized that "the discretion vested in the trial court over the conduct of a trial is great" and that a trial court has the authority to express itself in exercising this broad discretion. *Dow Chemical v. Francis*, 46 S.W.3d 237, 240-41 (Tex. 2001) (*per curiam*) (citations omitted). The trial court may properly intervene to maintain control in the courtroom, to expedite the trial, and to prevent what it considers to be a waste of time. *Dow Chemical*, 46 S.W.3d at 241 (citations omitted). In *Dow Chemical*, the Court explained:

> "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion," and opinions the judge forms during a trial do not necessitate recusal "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." Further, "[n]ot establishing bias or partiality . . . are expressions of impatience, dissatisfaction, annoyance, and even anger. . . . A judge's ordinary efforts at courtroom administration –even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain immune." *Id.* at 240, *citing Liteky v. United States*, 510 U.S. 540, 555-56, 114 S.Ct. 1147, 127 L.Ed2d 474 (1994) (internal citations omitted).

In short, a trial court has the inherent power to control the disposition of cases "with economy of time and effort for itself, for counsel, and for litigants." *Metzger v. Sebek*, 892 S.W.2d 20, 38 (Tex. App. –Houston [1st Dist.] 1994, writ denied), *citing Landis v. N. Am Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed 153 (1936).

judgment"), 47.1 (when resolution of an issue disposes of the appeal, an appellate court need not address any other issues raised); *see also In re Columbia Med. Ctr.*, 290 S.W.3d 204, 211 (Tex. 2009) (orig. proceeding) (appellate courts need explain by written opinion their analyses and conclusions as to the issues necessary for final disposition of an appeal). Issues Two, Three, Four, and Five are overruled.

*New Trial*

In Issue One, the Chappells posit that the trial court erred in denying their motion for new trial. We review a trial court's denial of a motion for new trial under an abuse of discretion. *Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 375 (Tex. 2000). The Chappells' new trial issue sets out each of the arguments addressed and determined heretofore. Having concluded that the trial court did not err, we find the trial court properly exercised its discretion in denying the Chappells' motion for new trial. Issue One is overruled.

**CONCLUSION**

The trial court's judgment is affirmed.

GUADALUPE RIVERA, Justice

October 9, 2013

Before McClure, C.J., Rivera, and Rodriguez, JJ.

19