

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| PAY AND SAVE, INC. D/B/A BIG 8 FOOD STORES, | § | No. 08-12-00357-CV |
| | § | |
| Appellant, | § | Appeal from the |
| | § | |
| v. | § | 210th District Court |
| | § | of El Paso County, Texas |
| COSME RAUL MARTINEZ, | § | |
| | | (TC# 2011-1668) |
| Appellee. | § | |

## **O P I N I O N**

Appellant Pay and Save, Inc., doing business as Big 8 Food Stores (Big 8), appeals a jury's finding that its negligence proximately caused the injury of Appellee Cosme Raul Martinez, and its award to Martinez of $8,000 as mental anguish damages. We reverse the award of past mental anguish damages, render a take-nothing judgment as to the past mental anguish claim, and affirm the remaining portions of the judgment.

### BACKGROUND

In October 2009, Martinez had surgery on his back, and sometime between February and March 2010, Martinez underwent surgery for a brain tumor. In March 2010, Rosaura Castro became Martinez's caregiver. On January 14, 2011, Martinez and Castro went shopping at Big 8

to buy some avocados. While shopping, Martinez stepped on a cucumber peel. In an effort to prevent himself from falling, Martinez held onto some beer boxes for two to three minutes. Martinez feared that if he fell down, the "surgery on [his] head could open up" and he would die. As he held onto the box, Martinez saw a cucumber peel on the floor. Martinez testified that he twisted his spinal column, back, and upper part of his body.

Martinez filed a premises liability suit against Big 8, which proceeded to trial. After a jury trial, the trial court entered judgment on the jury's verdict in favor of Martinez, which included an award of $8,000 for past mental anguish damages.

## DISCUSSION

Big 8 presents two issues on appeal. In Issue One, Big 8 asserts the trial evidence is legally insufficient to prove it had actual or constructive knowledge of the dangerous condition on its premises which caused Martinez to slip. In Issue Two, Big 8 contends the evidence is legally insufficient to support the jury's award of mental anguish damages.

### Standard of Review

A party attacking the legal sufficiency of an adverse finding on an issue on which it did not have the burden of proof must demonstrate on appeal that no evidence supports the adverse finding. *Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014). If the evidence offered to prove a vital fact is no more than a scintilla, we will sustain a legal sufficiency challenge. *Id.* Evidence that is so weak as to do no more than create a mere surmise or suspicion that the fact exists, does not exceed a scintilla. *See Brookshire Bros. v. Aldridge*, 438 S.W.3d 9, 29-30 (Tex. 2014)(citations omitted).

In considering a legal sufficiency point, we review the evidence in the light most favorable

2

to the verdict and indulge every reasonable inference that would support it. *City of Keller v. Wilson,* 168 S.W.3d 802, 810 (Tex. 2005). Even if evidence is undisputed, it is the province of the fact finder to draw from it whatever inferences it wishes so long as more than one inference is possible. *Id.* at 821. But if the evidence allows only one inference, neither the trier of fact nor the reviewing court may disregard it. *Id.* We are also mindful that the fact finder is the sole judge of the credibility of the witnesses and the weight to give their testimony. *Id.* at 819. When there is conflicting evidence, it is the province of the trier of fact to resolve such conflicts. *Id.* at 820. In every circumstance in which a reasonable trier of fact could resolve conflicting evidence either way, the reviewing court must presume it did so in favor of the prevailing party, and disregard the conflicting evidence in its sufficiency review. *Id.* at 821. If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then the fact finder must be allowed to do so. *Id.* at 822. So long as the evidence falls within this zone of reasonable disagreement, we may not substitute our judgment for that of the fact finder. *Id.* The ultimate test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Id.* at 827.

### *Premises Liability*

The threshold question in a premises liability case, as with any cause of action based on negligence, is the existence of and violation of a duty. *Chappell v. Allen*, 414 S.W.3d 316, 323 (Tex.App. – El Paso 2013, no pet.). The duty owed by a premises owner is determined by the status of the complaining party at the time and place of injury. *Scott & White Mem'l Hosp. v. Fair,* 310 S.W.3d 411, 412 (Tex. 2010); *Chappell*, 414 S.W.3d at 323.

That Martinez is an invitee is undisputed by the parties. *See Chappell*, 414 S.W.3d at 323

3

(invitee enters the premises of another at owner's or occupier's express or implied invitation for their mutual benefit). The elements of a premises liability cause of action when the injured party is an invitee are: (1) actual or constructive knowledge of a condition on the premises by the owner or occupier; (2) that the condition posed an unreasonable risk of harm; (3) that the owner or occupier did not exercise reasonable care to reduce or eliminate the risk; and (4) that the owner's or occupier's failure to use such care proximately caused the plaintiff's injury. *See CMH Homes, Inc. v. Daenen,* 15 S.W.3d 97, 99–100 (Tex. 2000)(invitee premises liability). An owner or occupier owes an invitee the duty to keep the property safe and must use reasonable care to protect the invitee from a condition on the land that creates an unreasonable risk of harm of which the owner or occupier knew or by the exercise of reasonable care would have discovered. *Id.* at 101. The core of the duty depends on actual or constructive knowledge of a dangerous condition that a reasonable inspection would reveal, and an owner or occupier bears no liability "for deterioration of its premises unless it knew of or by reasonable inspection would have discovered the deterioration." *Id.*

To satisfy the notice element, a plaintiff must establish that (1) the defendant placed the substance on the floor, (2) the defendant actually knew that the substance was on the floor, or (3) it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it. *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002)(citations omitted). The question of constructive notice requires analyzing the combination of proximity, conspicuity, and longevity. *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 567 (Tex. 2006).

Temporal evidence is the best indicator of whether the owner could have discovered and

4

remedied the condition. *Brookshire Bros.*, 438 S.W.3d at 30; *Reece,* 81 S.W.3d at 816. What constitutes a reasonable time for a premises owner to discover a dangerous condition will vary depending upon the facts and circumstances presented, and proximity evidence will often be relevant to the analysis. *Reece*, 81 S.W.3d at 816. An employee's proximity to a hazard, with no evidence indicating how long the hazard was there, merely indicates that it was possible for the premises owner to discover the condition, not that the premises owner reasonably should have discovered it. *Id*. Before liability can be imposed on the premises owner for failing to discover and rectify, or warn of, the dangerous condition, there must be some proof of how long the hazard was present. *Id*. However, an employee's close proximity to a less conspicuous hazard for a continuous and significant period of time may affect the jury's consideration of whether the premises owner should have become aware of the dangerous condition. *Id*.

*Analysis*

To show Big 8 had constructive notice of the cucumber peel on the floor, Martinez had to prove that it is more likely than not that the condition existed long enough to give Big 8 a reasonable opportunity to discover it. *See Brookshire Bros.*, 438 S.W.3d at 30; *Reece,* 81 S.W.3d at 814. Big 8 specifically complains that the evidence is legally insufficient to support the jury's finding that a dangerous condition existed long enough to charge it with constructive notice of the condition. It argues that Martinez's post-incident observations regarding the dirty floor and his comment that he observed another slip mark indicating that "somebody had slipped before" are not indicative of the time necessary to charge it with notice of the condition. Big 8 also contends that its employee's proximity to the hazard, without evidence indicating the duration of the hazard's existence, merely demonstrates that it was possible to discover the condition and fails to establish

5

that Big 8 should have discovered the hazard.   We disagree.

**A.  Longevity**

With regard to longevity, the jury heard conflicting evidence regarding the condition of the floor where Martinez slipped and the cucumber was found, whether the store floor had been swept, and if so, when it was swept.   Big 8's Store Manager, Alfredo Garcia, stated that he arrived at work at 6 a.m. on the morning of the incident.   He described the produce section of the store as being about 40 to 50 feet away from the area where the cucumber peel was found.   Garcia explained that a sweep log is kept to document when a sweep of the floor is performed, when the sweep was finished, and who performed the sweep.   In his capacity as a manager, it was Garcia's duty to verify that an employee who signs the sweep log actually performed the sweep.   The sweep log includes a space for Garcia to sign the log as verification of the sweep.

The sweep log from the day of the incident was admitted into evidence.   At the bottom of the form is a statement that a signature entered on the form verifies a sweep of the entire floor occurred by the named sweeper on the date and time indicated.   The log also includes a column in which the manager on duty may initial the fact that a sweep occurred, but none are signed.   The unverified sweep log includes entries representing that on the day of the incident "Alex Isais" performed a store sweep from 7 a.m. to 7:15 a.m., 8:15 to 8:30 a.m., 9:30 to 9:48 a.m., and again at 11:15 to 11:30 a.m.   The log also notes that Garcia had performed a store walk commencing at 10 a.m. and concluding at 10:15 a.m.

After Martinez slipped, Garcia prepared a Customer Report of Accident in which he noted that Martinez was "walking through [the] back aisle when he slipped on a cucumber peel in front [of the] Miller Lite display[.]"   On this report, Garcia entered the "time of day" as 11:46 a.m.

6

Garcia also prepared a Customer Accident Investigation report, in which he noted that the area was last inspected or cleaned at 10:30 a.m. by Alexis Isais.[1] Garcia agreed this notation indicates that a store sweep had been performed one hour and fifteen minutes before Martinez's incident. Garcia later conceded that he had not verified the sweep log by signing it, and agreed that he could have erred regarding the time when the area had last been inspected or cleaned because the sweep log attached to the accident investigation report did not show that Garcia or any Big 8 employee had performed an inspection at 10:30 a.m. The Customer Accident Investigation report also notes that Garcia inspected the area after the incident at 11:47 a.m. On cross-examination, Garcia testified that the area was actually swept at 11:15 to 11:30 a.m.

Big 8 employee Maria Valencia testified that she had assisted in sweeping the store when someone would go to lunch "or something." Although Valencia recalled that it takes between 20 to 30 minutes to sweep the store, she did not recall how often Big 8 would clean the floor. Valencia, an employee since 1998, explained that it is the store's policy to pick up or clean an area well when a spill or something dangerous is seen on the floor, and not to leave that area until it is cleaned. When asked whether she remembered anyone sweeping the floor on the day Martinez slipped, Valencia replied, "I do not remember that."

The jury also heard Martinez's testimony that the area of the floor where he slipped was very dirty, had dirt, and also had "[a]nother slip mark [where] somebody had slipped before." Martinez testified that he had no idea how long the skid marks had been present and did not see anyone else make any skid marks.

Castro, who was walking behind Martinez, did not see the cucumber peel before Martinez

---

[1] Garcia noted the difference between the two types of reports and explained, "The customer report of accident is what the customer is telling me happened [and] the customer accident investigation is what I witnessed."

7

slipped, did not know how long the cucumber peel had been present in the beer aisle, nor saw "how it got there[.]" Castro, too, testified that when she looked at the area of the floor where Martinez had slipped, "[Y]ou could see that there had been another slip there," that the floor was dirty, and "had dirt." Castro identified in a photograph two smear marks she had observed on the floor where Martinez slipped. Castro stated that it did not look like the store had been cleaned and that she did not see anyone cleaning the store that day. Castro agreed that Martinez had not slipped in the produce area but stated that she had observed pieces of broccoli, tomatoes, leaves, and cilantro present on the floor in the produce area of the store.

## B.  Proximity

Martinez presented evidence that one of Big 8's employees was in close proximity to the area prior to the incident. Martinez and Castro testified that after Martinez slipped, they observed Valencia to be six or seven feet away from them, and that when they called to her, she came to them and then called for assistance. Valencia, too, testified that she was only six to seven feet from the location where Martinez slipped and was within view of that area when she was called over. She stated that she had been labeling merchandise, for "[a]bout 15 minutes approximately or better said I don't remember." Valencia, who had no vision problems, looked toward the floor after she was summoned but did not inspect it, and she did not see anything before calling the store manager through an intercom. When shown a photograph of the cucumber peel on the floor, Valencia stated that she did not see "this spot on the floor" when she inspected the area but agreed that the photograph showed "an obvious marking on the floor[.]" Valencia agreed that she had stated during her pretrial deposition that she had seen a small scrape or mark on the floor that was between the colors of green and yellow, which she described as "a small line" at trial. While both

8

within view of and within six to seven feet of the area where the incident occurred, Valencia did not look to see if anything dangerous was on the floor during the 15-minute period and did not see any cucumber peel before she was called over to the area of the incident.

## C. Conspicuity

Regarding the conspicuity of the hazard, Martinez testified that nothing obstructed his vision but he did not see the cucumber peel before he stepped on it, did not know how the peel "got there," and did not know how long the peel had been present. Castro testified that she was walking behind Martinez when he slipped and they then realized Martinez had slipped on a cucumber peel located very far away from the produce. According to Castro, it was impossible for her to see the peel until after Martinez slipped. Castro described the cucumber peel as "kind of yellowish, like a beige color," and "green, kind of yellowish," and noted that the incident happened "very far away from the produce." Castro also noted that the peel was "kind of a little old." Valencia described the small scrape or mark on the floor as "[b]etween green and yellow" in color. Store manager Garcia described the cucumber peel as "[a] dark green substance . . . about two- to two-and-a-half inches long." Having reviewed the evidence in the light most favorable to the verdict and indulging every reasonable inference that would support it, and having credited favorable evidence if reasonable jurors could and disregarded contrary evidence unless reasonable jurors could not, we conclude Martinez presented more than a scintilla of evidence that, more likely than not, the hazardous condition on Big 8's floor existed long enough to give Big 8 a reasonable opportunity to discover it, and that such evidence would enable reasonable and fair-minded people to reach the verdict returned by the jury in this case. *See Brookshire Bros.*, 438 S.W.3d at 30; *City of Keller*, 168 S.W.3d at 827. Issue One is overruled.

9

*Past Mental Anguish Damages*

The jury returned a verdict awarding Martinez $8,000 as past mental anguish damages, which the trial court entered in its judgment. In Issue Two, Big 8 contends Martinez presented no evidence of compensable mental anguish because the evidence failed to show that Martinez required any treatment for his anxiety and does not indicate a substantial disruption in Martinez's daily routine or a high degree of mental pain and distress.

Even where a defendant's conduct is merely negligent, "'Texas has authorized recovery of mental anguish damages in virtually all personal injury actions.'" *City of Tyler v. Likes*, 962 S.W.2d 489, 495 (Tex. 1997), *quoting Krishnan v. Sepulveda,* 916 S.W.2d 478, 481 (Tex. 1995). However, in *Parkway Co. v. Woodruff,* 901 S.W.2d 434, 444 (Tex. 1995)(citations omitted), the Texas Supreme Court held that mental anguish damages could not be awarded without either direct evidence of the nature, duration, or severity of plaintiff's anguish, thus establishing a substantial disruption in the plaintiff's daily routine, or other evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger. *See also Hancock v. Variyam*, 400 S.W.3d 59, 68 (Tex. 2013). It is well-settled that there must be both evidence of the existence of compensable mental anguish and evidence to justify the amount awarded. *See Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 231 (Tex. 2011); *Bentley v. Bunton*, 94 S.W.3d 561, 606 (Tex. 2002), *quoting Saenz v. Fidelity & Guar. Ins.,* 925 S.W.2d 607, 614 (Tex. 1996). Mental anguish damages cannot be determined with mathematical precision but only through the exercise of sound judgment. *Bentley,* 94 S.W.3d at 605. Even so, the jury cannot simply pick a number and put it in the blank but must award fair and reasonable compensation based upon the evidence. *Saenz,* 925 S.W.2d at 614.

When Martinez was asked to identify some of the acts he could perform immediately before the incident that he could no longer perform, Martinez replied that he continued to suffer pain in his back and shoulder as a result of the incident and can no longer do things that he could do before such as walking to the store, moving around in his apartment, getting dressed, and move "a little bit more without pain." Castro testified Martinez's physical condition has deteriorated and that she now provides more care to Martinez such as assisting him to put on his socks and shoes, and tying his shoelaces. Castro lends Martinez a hand both to arise and walk around his apartment because he tips over and is always thinking he is going to fall. According to Castro, Martinez does not go for walks as he did before and complains very often of pain.

At trial, Martinez testified that he was very nervous and scared when he slipped and was very worried about his spinal column, his ability to stand up, and a reopening of "the operation [performed] on [his] head" and thought a fall would reopen the surgical wound on his head and kill him. Martinez was specifically asked whether he had suffered mental anguish because of the incident at Big 8. Martinez answered that he had so suffered, and described his past mental anguish in terms of fear. He specifically testified that he is scared to go out at night and when invited by his siblings and a male cousin to go out. Martinez testified that he does not know whether that will change in the future. Castro stated that after the incident, Martinez is afraid to go out to walk and is always looking down at the floor, thinking he is going to fall.

The evidence presented in support of the jury's past mental anguish award focused on fear and anxiety regarding the slip at the store, walking and going out at night, and establishes that Martinez needs additional assistance in putting on his shoes and socks and walking around his house. However, this evidence fails to identify a specific "high degree of mental pain and distress

11

that is more than mere worry, anxiety, vexation, embarrassment, or anger" or to identify a substantial disruption of Martinez's daily routine. *See Guerra*, 348 S.W.3d at 232; *Parkway Co.*, 901 S.W.2d at 444; *see Burlington Coat Factory Warehouse of El Paso, Inc. v. Flores*, 951 S.W.2d 542, 548 (Tex.App. – El Paso 1997, no pet.)(evidence of brief marital split and necessity of placing children in counseling was sufficient to show substantial disruption in plaintiff's daily routine over and above mere worry, anxiety, vexation, embarrassment, or anger); *compare Fifth Club, Inc. v. Ramirez,* 196 S.W.3d 788, 797–98 (Tex. 2006)(plaintiff's testimony that he was depressed, humiliated, non-communicative, unable to sleep, angry, and suffered from headaches and nightmares and that his daily activities and family relationships were detrimentally affected held to be legally sufficient evidence of mental anguish); *Bentley*, 94 S.W.3d at 606-07 (plaintiff's testimony that he had lost sleep, had been embarrassed in his community, his family had been disrupted, and his children distressed at school, coupled with evidence from friends that plaintiff was depressed, that his honor and integrity had been impugned, and that his family had suffered left no doubt that plaintiff had suffered mental anguish). Viewing the evidence in the light most favorable to the verdict and indulging every reasonable inference that would support it, we are unable to conclude that the existence of past mental anguish is supported by legally sufficient evidence. *See Guerra*, 348 S.W.3d at 231; *Bentley*, 94 S.W.3d at 606; *Saenz*, 925 S.W.2d at 614; *City of Keller,* 168 S.W.3d at 827. Issue Two is sustained.

## CONCLUSION

We reverse the trial court's award of $8,000 in past mental anguish damages to Martinez and render judgment that Martinez take nothing on his claims for past mental anguish damages. In all other respects, the trial court's judgment is affirmed.

12

YVONNE T. RODRIGUEZ, Justice

December 12, 2014

Before McClure, C.J., Rivera, and Rodriguez, JJ.
Rivera, J., not participating