ACCEPTED
06-16-00032-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
8/12/2016 4:15:45 PM
DEBBIE AUTREY
CLERK

## NO. 06-16-00032-CV

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
8/12/2016 4:15:45 PM
DEBBIE AUTREY
Clerk

**In the Sixth Court of Appeals
Texarkana, Texas**

**Kerry Bryon Noble
Appellant**

**v.**

**Gayla Renee Lawrence
Appellee**

**On Appeal from the 62nd Judicial District Court
Franklin County, Texas
Cause No. 11797
Honorable Judge Will Biard**

## BRIEF OF APPELLANT

Judy Hodgkiss
State License #17136525
Email: jhodgkiss@moorefirm.com
100 North Main Street
Paris, Texas 75460-4222
Telephone 903/784-4393
Facsimile 903/783-0042

ATTORNEY FOR APPELLANT

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

Table of Contents.................................................................... ii

Identity of Parties and Counsel................................................ vi

Index of Authorities............................................................... vii

Issues Presented.................................................................... x

Statement Regarding Oral Argument ....................................... xii

Statement of Case................................................................. 1

Statement of Facts................................................................ 2

Summary of the Argument...................................................... 7

**ISSUE NO. ONE**
> **WAS THE EVIDENCE LEGALLY SUFFICIENT TO
> SUPPORT THE TRIAL COURT'S AWARD OF
> $200,000 FOR GAYLA NOBLE'S PAST PAIN AND
> AND SUFFERING AND MENTAL ANGUISH
> AS THE RESULT OF ANY ASSAULT BY
> BRYON NOBLE?**

**ISSUE NO. TWO**
> **WAS THE EVIDENCE FACTUALLY SUFFICIENT
> TO SUPPORT THE TRIAL COURT'S AWARD OF
> $200,000 FOR GAYLA NOBLE'S PAST PAIN AND
> SUFFERING AND MENTAL ANGUISH AS THE
> RESULT OF ANY ASSAULT BY BRYON NOBLE?**

Arguments and Authorities....................................................... 10

**ISSUE NO. THREE**
> **WAS THE AWARD OF $200,000.00 FOR PAST PAIN**

**AND SUFFERING AND MENTAL ANGUISH EXCESSIVE?**

Arguments and Authorities.................................................................. 20

**ISSUE NO. FOUR**
WAS THE EVIDENCE LEGALLY SUFFICIENT TO SUPPORT THE TRIAL COURT'S AWARD OF $25,000.00 FOR FUTURE PAIN AND SUFFERING AND MENTAL ANGUISH?

**ISSUE NO. FIVE**
WAS THE EVIDENCE FACTUALLY SUFFICIENT TO SUPPORT THE TRIAL COURT'S AWARD OF $25,000.00 FOR FUTURE PAIN AND SUFFERING AND MENTAL ANGUISH?

Arguments and Authorities.................................................................. 31

**ISSUE NO. SIX**
WAS THE AWARD OF DAMAGES FOR DAMAGES FOR FUTURE PAIN AND SUFFERING AND MENTAL ANGUISH EXCESSIVE?

Arguments and Authorities.................................................................. 36

**ISSUE NO. SEVEN**
WAS THE EVIDENCE LEGALLY SUFFICIENT TO SUPPORT THE AWARD OF DAMAGES FOR DISFIGUREMENT?

**ISSUE NO. EIGHT**
WAS THE EVIDENCE FACTUALLY SUFFICIENT TO SUPPORT THE AWARD OF DAMAGES FOR DISFIGUREMENT?

Arguments and Authorities.................................................................. 37

**ISSUE NO. NINE**
      **WAS THE AWARD OF $25,000.00 IN DAMAGES
      FOR DISFIGUREMENT EXCESSIVE?**

Arguments and Authorities..........................................................     40

**ISSUE NO. TEN**
      **WAS THE EVIDENCE LEGALLY SUFFICIENT TO
      SUPPORT THE AMOUNT OF MEDICAL EXPENSES
      AWARDED TO GAYLA NOBLE?**

**ISSUE NO. ELEVEN**
      **WAS THE EVIDENCE FACTUALLY SUFFICIENT
      TO SUPPORT THE AMOUNT OF MEDICAL EXPENSES
      AWARDED TO GAYLA NOBLE?**

Arguments and Authorities...........................................................     41

**ISSUE NO. TWELVE**
      **WAS THE EVIDENCE LEGALLY SUFFICIENT TO
      SUPPORT A FINDING THAT BRYON NOBLE MADE
      A GIFT OF A ROLEX WATCH TO GAYLA NOBLE?**

**ISSUE NO. THIRTEEN**
      **WAS THE EVIDENCE FACTUALLY SUFFICIENT
      TO SUPPORT A FINDING THAT BRYON NOBLE
      MADE A GIFT OF A ROLEX WATCH TO GAYLA
      NOBLE?**

Arguments and Authorities..........................................................     44

Prayer for Relief.......................................................................     47

Certificate of Compliance...........................................................     48

Certificate of Service.......................................................................... 49

Appendix............................................................................................ 50

## Identity of Parties and Counsel

Kerry Bryon Noble                        *Appellant/Petitioner*
% The Moore Law Firm, L.L.P.
100 North Main Street
Paris, Texas 75460


Judy Hodgkiss                            *Appellate Counsel for*
The Moore Law Firm, L.L.P.               *Appellant Kerry Bryon Noble*
100 North Main Street
Paris, Texas 75460


Lori Chism                               *Trial Counsel for Appellant*
107 Madison
Mount Pleasant, Texas 75455


Gayla Renee Lawrence                     *Appellee/Respondent*
% Bird Old, III
302 North Jefferson Avenue
P.O. Box 448
Mount Pleasant, Texas 75456


Bird Old, III
302 North Jefferson Avenue               *Appellate and Trial Counsel for*
P.O. Box 448                             *Appellee Gayla Renee Lawrence*
Mount Pleasant, Texas 75456

# INDEX OF AUTHORITIES

**CASES**                                                                  **PAGE**

*BMC Software Belgium, N.V. v. Marchand,* 83 SW3d 789.............. 10
   (Tex. 2002)

*Catalina v. Blasdel*, 881 SW2d 295 (Tex. 1994)................................ 7, 10

*Christian v. Walker,* 381 SW2d 675 (Tex.Civ.App. - ......................... 45, 46
   Texarkana 1964, no writ)_____

*City of Keller v. Wilson,* 168 SW3d 802 (Tex. 2005)........................ 10, 11

*Dow Chemical Co. v. Frances,* 46 SW3d 237 (Tex. 2001)................ 11

*Duff v. Yelin*, 751 SW2d 175 (Tex. 1988)........................................... 12, 33

*Durban v. Guajardo,* 79 SW3d 198 (Tex. App. - ................................ 36
   Dallas 2002, no pet.).

*Fifth Club, Inc. v. Ramirez,* 196 SW3d 788 (Tex. 2006)...................... 16

*Figueroa v. Davis,* 318 SW3d 53 (Tex. App. - Houston....................... 32, 41
   [1st Dist.] 2010, no pet.)

*General Motors Corp. v. Burry*, 203 SW3d 514 (Tex........................... 20, 21, 22
   App.-Fort Worth 2006, rev. den.)

*Gibbins v. Berlin*, 162 SW3d 335 (Tex. App. - Fort Worth.................... 32
   2005, no pet.)

*Goldman v. Torres,* 341 SW2d 154, 160 (1960).................................... 38

*Guevara v. Ferrer,* 247 SW3d 662 (Tex. 2007)........................................ 8,12, 13,
                                                                                33,42,43

*Gunn Infiniti, Inc. v. O'Byrne,* 996 SW2d 854 (Tex. 1999)..................... 16

*Hawkins v. Walker,* 238 SW3d 517 (Tex. App. -....................................... 36
    Beaumont 2007, no pet.)

*Hayes v. Rinehart*, 65 SW3d 286 (Tex.App. - Eastland 2001, no pet.).. .. 45

*Hopkins County Hospital District v. Allen*, 760 SW2d 341 (Tex. App..... 38
    –Texarkana 1988, no pet.).

*In re Marriage of Moncey,* 404 SW3d 701................................................ 45
    (Tex. App. - Texarkana 2013, no pet.)

*Jones v. Jones,* 181 SW2d 988 (Tex.Civ.App. -....................................... 45
    Dallas 1944 writ ref'd w.o.m.)

*Katy Springs & Manufacturing, Inc.v. Favalora,*................................... 11,12,16,34
    476 SW3d 579 (Tex. App. Houston [14th Dist.] 2015, rev. den.)

*Landreth  v. Reed,* 570 SW2d 486 (Tex. Civ. App.-................................... 28
    Texarkana 1978, no writ)

*Larson v. Cactus Utility Co.*, 730 SW2d 640 (Tex 1987).......................... 23

*Manning v. Golden*, 2014 WL 806326 (Tex. App.-Tyler, no pet.)............. 30

*Miller v. Argumaniz,* 479 SW3d 306 (Tex. App. -..................................... 17
    El Paso 2015, rev. den.).

*Ortiz v. Furr's Supermarkets*, 26 SW3d 646 (Tex. App............................. 19
    - El Paso 2000, no pet.)

*Pay and Save, Inc. v. Martinez*, 452 SW3d 923.......................................... 18
    (Tex. App. - El Paso 2014, rev. dism.).

*Pendergraft v. Carrillo*, 273 SW3d 362 (Tex.App. - ................................. 9, 20
    Eastland 2008, rev. den.)                             38,39

*PNS Stores, Inc. v. Munguia,* 484 SW3d 503 (Tex. App. - ........................ 15,26,
    Houston [14[th] Dist.] 2016, no pet.) 32,34

*Rentech Steal, LLC. v. Teel*, 299 SW3d 155 (Tex. App. - ........................... 44
    Eastland 2009, rev. dism.)

*Roberts v. Roberts,* 999 SW2d 424  (Tex. App. - El Paso 1999, no pet.)...... 9,44

*Saenz v Fidelity and Guaranty Insurance Underwriters,*............................ 25,27
    925 SW2d 607 (Tex. 1996)

*Sharon v. Martinez*, 900 SW2d 777 (Tex. App. - .......................................... 38
    Corpus Christi 1996, no pet.)

*Smith v. Carter,* 2012 WL 3252499 (Tex. App. - .......................................... 41
    Corpus Christi, rev. den.)

*Sunbridge Healthcare Corp. v. Penny*, 160 SW3d 230 ............................... 9,21,22
    (Tex. App.-Texarkana 2005, no pet.) *26,28, 38, 40*

*Texarkana Memorial Hospital, Inc. v. Murdock,*........................................ 11,33,34
    946 SW2d 836 (Tex. 1997).

*Universe Life Ins. Co. v. Giles,* 950 SW2d 48 (Tex. 1997)........................ 8,15,
    16,27

*Weidner v. Sanchez,* 14 SW3d 353 (Tex. App- Houston ...............................12
    [14[th] Dist.] 2000, no pet.)

**PUBLICATIONS**

*Texas Lawyer*, July 1, 2016..........................................................................29, 30

# ISSUES PRESENTED

**ISSUE NO. ONE**

    WAS THE EVIDENCE LEGALLY SUFFICIENT TO SUPPORT THE TRIAL COURT'S AWARD OF $200,000 FOR GAYLA NOBLE'S PAST PAIN AND SUFFERING AND MENTAL ANGUISH AS THE RESULT OF ANY ASSAULT BY BRYON NOBLE?

**ISSUE NO. TWO**

    WAS THE EVIDENCE FACTUALLY SUFFICIENT TO SUPPORT THE TRIAL COURT'S AWARD OF $200,000 FOR GAYLA NOBLE'S PAST PAIN AND SUFFERING AND MENTAL ANGUISH AS THE RESULT OF ANY ASSAULT BY BRYON NOBLE?

**ISSUE NO. THREE**

    WAS THE AWARD OF $200,000.00 FOR PAST PAIN AND SUFFERING AND MENTAL ANGUISH EXCESSIVE?

**ISSUE NO. FOUR**

    WAS THE EVIDENCE LEGALLY SUFFICIENT TO SUPPORT THE TRIAL COURT'S AWARD OF $25,000.00 FOR FUTURE PAIN AND SUFFERING AND MENTAL ANGUISH?

**ISSUE NO. FIVE**

    WAS THE EVIDENCE FACTUALLY SUFFICIENT TO SUPPORT THE TRIAL COURT'S AWARD OF $25,000.00 FOR FUTURE PAIN AND SUFFERING AND MENTAL ANGUISH?

**ISSUE NO. SIX**

    WAS THE AWARD OF DAMAGES FOR DAMAGES FOR FUTURE PAIN AND SUFFERING AND MENTAL ANGUISH EXCESSIVE?

**ISSUE NO. SEVEN**

    WAS THE EVIDENCE LEGALLY SUFFICIENT TO SUPPORT THE AWARD OF DAMAGES FOR DISFIGUREMENT?

**ISSUE NO. EIGHT**

 WAS THE EVIDENCE FACTUALLY SUFFICIENT TO SUPPORT THE AWARD OF DAMAGES FOR DISFIGUREMENT?

**ISSUE NO. NINE**

 WAS THE AWARD OF $25,000.00 IN DAMAGES FOR DISFIGUREMENT EXCESSIVE?

**ISSUE NO. TEN**

 WAS THE EVIDENCE LEGALLY SUFFICIENT TO SUPPORT THE AMOUNT OF MEDICAL EXPENSES AWARDED TO GAYLA NOBLE?

**ISSUE NO. ELEVEN**

 WAS THE EVIDENCE FACTUALLY SUFFICIENT TO SUPPORT THE AMOUNT OF MEDICAL EXPENSES AWARDED TO GAYLA NOBLE?

**ISSUE NO. TWELVE**

 WAS THE EVIDENCE LEGALLY SUFFICIENT TO SUPPORT A FINDING THAT BRYON NOBLE MADE A GIFT OF A ROLEX WATCH TO GAYLA NOBLE?

**ISSUE NO. THIRTEEN**

 WAS THE EVIDENCE FACTUALLY SUFFICIENT TO SUPPORT A FINDING THAT BRYON NOBLE MADE A GIFT OF A ROLEX WATCH TO GAYLA NOBLE?

**STATEMENT REGARDING ORAL ARGUMENT**

Appellant requests oral argument.  Argument would assist the Court because resolution of the questions and issues presented depend upon a detailed exploration of the facts of the case.  Further, oral argument would provide this Court with an opportunity to question the parties regarding their positions and the legal authorities that support the same.

# STATEMENT OF THE CASE

Appellant Kerry Bryon Noble was the Petitioner in divorce proceedings in Cause No. 11797, *In The Matter Of The Marriage Of Kerry Bryon Noble andGayla Renee Lawrence.* (CR, p. 4). Appellee Gayla Renee Noble filed a first amended counterpetition for divorce seeking damages for assaults). (CR, p. 48). Following a bench trial in the 62nd Judicial District Court of Franklin County, Texas, on March 2, 2016, Honorable Judge Will Biard awarded Respondent Gayla Renee Lawrence, relevant to this appeal, a total of $250,600.00 for reasonable and necessary medical expenses in the past, physical pain, suffering, and mental anguish in the past and future, and disfigurement in a final decree of divorce signed on March 24, 2016. (CR, p. 55). Respondent was also awarded attorney's fees, one-half interest in a house, a 2010 Mercedes vehicle, a Rolex watch, a wedding ring and proceeds from its sale, and furniture. Petitioner filed a Request for Findings of Fact and Conclusions of Law on March 29, 2016, and Notice of Past-Due Findings of Fact and Conclusions of Law on April 19, 2016. (CR, pp. 63, 68). Petitioner filed a Motion for New Trial on April 20, 2016 which was denied on April 20, 2016. (CR, p. 70). Petitioner filed his Notice of Appeal on April 25, 2016. (CR, p. 73). The Court filed Findings of Fact and Conclusions of Law on April 29, 2016. (CR, p. 80).

**STATEMENT OF FACTS**

Kerry Bryon Noble ("Bryon") and Gayla Renee Lawrence ("Gayla")were married on October 14, 2014. (RR, p. 9). Gayla moved out for the first time two weeks later. (RR, p. 10). She returned approximately a week later. (RR, p. 11). Bryon filed for divorce approximately two weeks into the marriage. (RR, p. 25). However, the couple reconciled several times when Bryon promised to go to counseling and church. (RR, pp. 26-27). At one point during the marriage, Gayla moved to Sherman, Texas to live with her sister for around six weeks. (RR, p. 27). Gayla eventually returned to live in a house owned by Bryon. (RR, p. 28). Gayla was a nurse prior to meeting Bryon, but she stopped working during the marriage, claiming he would not allow her to work, and her license lapsed. (RR, pp. 29-30). Gayla worked as a nurse again from August 2015 until around two weeks before trial, when she was laid off. (RR, pp. 30-31). The couple attended counseling, starting in November 2014. (RR, p. 11). The couple finally separated in April 2015. (RR, p. 10).

Gayla had possession of several items of value which were awarded to her by the Court. She was living in a house in which she testified Bryon had given her a one-half interest (RR, p. 19); she was driving a 2010 Mercedes which was already paid off and was owned by Bryon prior to the marriage; (RR, pp. 17-19, 58); she sold

2

her wedding ring for approximately $9,000.00 (RR, p. 16); and she was carrying a Louis Vuitton purse the day of the trial for which Bryon had paid. (RR, p. 38). In addition, Gayla was working as a charge nurse making $19.00 per hour from August 2015 until shortly before trial. (RR, p. 30-31). However, Gayla stated she felt that she was entitled to more property because of alleged abuse by Bryon. (RR, p. 22).

Gayla claimed that she now "worries" and she believes she may need counseling, but she did not know how much. (RR, p. 24). She stated that she felt depressed and therefore did not work during the summer of 2015. (RR, p. 31). She paid her bills that summer with the proceeds from the ring she sold for $9,000.00. (RR, p. 31). At the time of trial she was training to work in freight brokering. (RR, p. 72).

Gayla alleged that she had about $600.00 in medical expenses relating to injuries caused by Bryon. (RR, p. 32). These expenses resulted from visits to chiropractor Tim Davis. (RR, p. 32). Gayla stated she visited the chiropractor because Bryon would hit her, three times a week at the beginning of the marriage, and five or six times after she returned to live with him in February. (RR, p. 33). Gayla stated the altercations with Bryon started during their honeymoon in Dallas. (RR, p. 52). She stated she woke up as he pulled her hair and dragged her out of bed, whipped her, and threw her across the room and into a wall. (RR, p. 52). In January

3

2015, Gayla claims Bryon hit her, kicked her in the head, hit her in the head, put a scarf down her throat, and held her by the knees. (RR, pp. 62-63). She went to the police station and pictures were taken. (RR, pp. 63-64, Respondent's Exhibits 3 and 4). The pictures showed bruises and scrapes to her arms and legs. (RR, pp. 65-66). The couple went to five or six sessions of marriage counseling. (RR, pp. 56, 61). She claimed to have visited the chiropractor eight to ten times, but was not seeing him at the time of trial. (RR, pp. 33-34). Gayla had two sessions with a counselor, which occurred six weeks or more before trial. (RR, p. 34). This cost $50.00 per session. (RR, p. 34). Gayla claims she is scared of Bryon, she has crying spells, and she hurts in her hips and the sides of her legs. (RR, pp. 73-74). However, she had suffered from back problems in the past. (RR, pp. 74-75). Gayla also stated that she had low self-esteem, but also testified that she had dated since her separation from Bryon. (RR, p. 92-93). Gayla also testified that she had sexual abuse issues from her father. (RR, p. 99).

Gayla testified concerning an assault in June 2015 that occurred while she was giving Bryon a ride to the District Attorney's office (RR, p. 104). He asked her to go to the District Attorney's office to drop charges against him and he would drop charges against her sons for attacking him. (RR, pp. 104-105). She claimed that during this trip her face was slammed into a dashboard. (RR, p. 81). She said he

4

choked her and threw her all over. (RR, p. 83). She testified that pictures of those injuries were taken in June by Tim Davis, her chiropractor. (RR, p. 81). Gayla offered the testimony of Tim Davis. (RR, p. 108). His testimony was the only evidence offered by any healthcare provider. He saw her beginning in May 2015. (RR, p. 108). She complained of neck pain, headaches, and hip pain. (RR, p. 108-109). She said she had been slammed into a dashboard and that she had a prior hip issue which she thought related to being slammed into the ground. (RR, p. 109). He found bruising and a laceration on her head. (RR, p. 110). He took these photographs on May 11, and not after the alleged June assault. (RR, p. 110, Respondent's Exhibits 14 and 15). He diagnosed her with a neck sprain/strain and with scar tissue built up in her right hip area. (RR, p. 111). Tim Davis did not know what caused the scar tissue. (RR, p. 112). He treated her with physical and physiotherapy to decrease the edema and spasms from the strain/sprain. (RR, p. 112). He saw her from May 11, 2015, until June 10, 2015, for a total of seven appointments. (RR, pp. 112-113). He treated her for the same thing every time. (RR, p. 113). He thought she got better but he did not see her as much as he probably planned. (RR, p. 113). She said she had pain but some of the orthopaedic tests that he performed did not show any severe damage. (RR, p. 113). Davis did not release Gayla as she simply did not return for any more visits. (RR, p. 114). Although he

5

called her injury a whiplash, he did not grade it as any severe strain/sprain. (RR, p. 118). Davis testified that the total bill for his services was approximately $407.00. (RR, p. 115). Interestingly, Gayla testified that an assault occurred on June 10, 2015. (RR, pp. 83, 96). Tim Davis saw her that day but nothing had changed in regard to her injuries. (RR, p. 113).

After leaving Bryon, but during the marriage, Gayla purchased a bed, a sofa, a television, a kitchen table, washer and dryer, and a refrigerator to furnish her house. (RR, p. 35). Gayla testified that Bryon had signed over to her a 2010 Mercedes and a one-half interest in a house which he owned prior to the marriage. (RR, pp. 16, 17, 19, 38-39, 87). She had sold the wedding ring for $9000.00 and had a Louis Vuitton purse for which Bryon had paid. (RR, pp. 16, 38). Additionally, she had possession of Bryon's Rolex watch which he owned prior to the marriage. (RR, pp. 15, 87). Gayla requested $125,000.00 for the total amount of all actual damages sought. (RR, pp. 126-127). However, the Court awarded her $250,600.00, in addition to one-half interest in the house, the 2010 Mercedes, Rolex watch, wedding ring and any proceeds therefrom, and furniture.

Other relevant facts will be discussed in the "Argument" section below.

## SUMMARY OF THE ARGUMENT

The Court in this short term marriage granted a divorce including a judgment for damages totaling $250,600.00 for past and future pain and suffering and mental anguish, past medical expenses, and disfigurement. A trial court's findings of fact and legal conclusions are reviewed applying the same standard that would be applied to a jury verdict. *Catalina v. Blasdel*, 881 SW2d 295 (Tex. 1994).

Gayla specifically alleged two incidents of assault occurring on January 21, 2015 and June 10, 2015. (CR, p. 33). Regarding the January incident, Gayla described being kicked and hit on the head. (RR, p. 63). The only evidence of injury from the incident were photographs of bruises. (RR, p. 65, R's Exs. 3 and 4). Gayla sought no medical treatment until May 11, 2015 when she saw a chiropractor who diagnosed her with neck sprain/strain and scar tissue in the hip area. The chiropractor whose testimony was the only medical expert testimony offered by Gayla could not opine as to the cause of the scar tissue. Further, the chiropractor did not testify that the events described by Gayla as occurring in January had caused the neck strain. (RR, pp. 110-112). In regard to the second incident, the chiropractor saw Gayla the day of the alleged second assault. The chiropractor described no new injuries on June 10, 2015. (RR, p. 113).

Generally, expert testimony is necessary to establish causation as to medical

7

conditions outside the common knowledge and experience of jurors. *Guevara v. Ferrer, 247 SW3d 662 (Tex. 2007)*. Gayla failed to offer such testimony and therefore the evidence is legally and factually insufficient to find that Gayla suffered past and future pain and suffering as a result therefrom.

Further, the record is devoid of evidence to justify the award for past or future mental anguish. Generally, plaintiffs may not recover mental anguish damages unless they introduce "direct evidence of the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiff's daily routine." *Universe Life Ins. Co. v. Giles,* 950 SW2d 48 (Tex. 1997). Gayla testified as to her worries and depression but admitted the following:

    a.  she had only seen a counselor twice;

    b.  had furnished her house during the pendency of the divorce;

    c.  had worked for a year before being laid off;

    d.  was in training for a new career; and

    e.  had been dating others. (RR, pp. 31, 34, 35, 70-72, 79, 92).

The evidence was also insufficient to support an award of $25,000.00 for disfigurement. The evidence of scarring by Gayla appears to be very minimal. The court's have consistently held that to secure an award of disfigurement, the injury must be "that which impairs the beauty, symmetry, or appearance of a person".

*Pendergraft v. Carrillo,* 272 SW3d 362, 367 (Tex.App. - Eastland 2008). The slight marks referenced by Gayla do not rise to the level of disfigurement. The Court even awarded $600.00 in medical expenses which is more than were testified to by the chiropractor. (RR, p. 115).

Even if Gayla suffered pain and suffering and mental anguish, the damages awarded are excessive. A damage verdict will be set aside if it is excessive. *Sunbridge Healthcare Corp. v. Penney,* 160 SW3d 230 (2015). Gayla through counsel's argument only requested $125,000.00 in damages but the trial court awarded twice that amount. (RR, pp. 126-127). Gayla only had $407.00 of chiropractic expense; had no severe injuries; had seen a counselor only twice; and had been working as a charge nurse but was awarded damages of $250,600.00.

The trial court further found that Bryon had given a Rolex watch to Gayla. For there to be a gift, there must be donative intent. *Roberts v. Roberts,* 999 SW2d 424 (Tex.App. El Paso 1999). The person claiming a gift must do so by clear and substantial evidence. Even Gayla in her testimony admitted that Bryon never said he was giving the Rolex watch to her but that was simply her "conclusion". (RR, p. 87).

For all the reasons described above, the verdict in this matter should be set aside and a new trial granted or, in the alternative, the damages be found excessive and a remittitur ordered.

9

## ISSUE NO. ONE

**WAS THE EVIDENCE LEGALLY SUFFICIENT TO SUPPORT THE TRIAL COURT'S AWARD OF $200,000 FOR GAYLA NOBLE'S PAST PAIN AND SUFFERING AND MENTAL ANGUISH AS THE RESULT OF ANY ASSAULT BY BRYON NOBLE?**

## ISSUE NO. TWO

**WAS THE EVIDENCE FACTUALLY SUFFICIENT TO SUPPORT THE TRIAL COURT'S AWARD OF $200,000 FOR GAYLA NOBLE'S PAST PAIN AND SUFFERING AND MENTAL ANGUISH AS THE RESULT OF ANY ASSAULT BY BRYON NOBLE?**

## Arguments and Authorities

The Court of Appeals reviews a trial court's findings of fact for legal and factual sufficiency under the same standards it applies in reviewing a jury's findings. *Catalina v. Blasdel*, supra. It reviews a trial court's conclusions of law de novo. *BMC Software Belgium, N.V. v. Marchand,* 83 SW3d 789 (Tex. 2002). In analyzing a legal sufficiency challenge the Court of Appeals must determine whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson,* 168 SW3d 802 (Tex. 2005). The Court of Appeals must review the evidence in the light most favorable to the challenged finding, crediting any favorable evidence if a reasonable fact-finder could and disregarding any contrary evidence unless a reasonable fact finder could not. *City of*

*Keller v. Wilson, supra.* The Court of Appeals may sustain a no-evidence or legal sufficiency challenge only when (1) the record discloses a complete absence of a vital fact; (2) the Court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the only evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *City of Keller v. Wilson, supra.*

In analyzing a factual sufficiency challenge the Court of Appeals must consider and weigh all the evidence and determine whether the evidence in support of a finding is so weak as to be clearly wrong and unjust or whether the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Dow Chemical Co. v. Frances,* 46 SW3d 237 (Tex. 2001). Bryon Noble will address each element of the award separately.

### *Past Pain and Suffering*

A plaintiff can recover only for injuries caused by the event made the basis of the suit. *Texarkana Memorial Hospital, Inc. v. Murdock,* 946 SW2d 836 (Tex. 1997). This causal nexus is strictly referable to the damages portion of the plaintiff's action. *Katy Springs & Manufacturing, Inc.v. Favalora,* 476 SW3d 579 (Tex. App. Houston [14th Dist.] 2015, rev. den.). Even if the defendant's liability has been established, proof of this causal connection is necessary to ascertain the amount of

11

damages to which the plaintiff is entitled. *Katy Springs & Manufacturing, Inc. v. Favalora, supra.*

To establish causation in a personal injury case, a plaintiff must prove that the conduct of the defendant caused an event and that event caused the plaintiff to suffer compensable damages. This causal link between the event sued upon and the plaintiff's injuries must be shown by competent evidence. *Weidner v. Sanchez,* 14 SW3d 353 (Tex. App- Houston [14th Dist.] 2000, no pet.).

The general rule has long been that expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors. *Guevara v. Ferrer,* 247 SW3d 662 (Tex. 2007). Testimony regarding possibilities does not establish causation. See *Duff v. Yelin*, 751 SW2d 175 (Tex. 1988) where a doctor testified as to two possible causes of the plaintiff's nerve injury. The court found that while it is not absolutely necessary that an expert couch his opinions in terms of "reasonable medical probability", a finding should not be upheld when it is based merely upon speculation and conjecture. Evidence of temporal proximity between an event and subsequently manifested physical conditions is relevant but not necessarily proof of causation. *Guevara v. Ferrer, supra.* Non-expert evidence alone is sufficient in a personal injury action to support a finding of causation of injury only in limited circumstances where both the occurrence and

conditions complained of are such that the general experience and common sense of laypersons are sufficient to evaluate the conditions and whether they were probably caused by the occurrence. *Guevara v. Ferrer, supra.*

In the present case, Gayla specifically pleaded two assaults, one occurring on January 21, 2015 and the other on June 10, 2015. (CR, p. 48). The only expert testimony offered by Gayla as to the cause of her injuries was that of Tim Davis, a chiropractor. (RR, pp. 32, 33, 108-111). Davis saw Gayla for the first time on May 11, 2015. (R's Ex.16; RR, pp. 108, 110-111).

Gayla complained of neck pain, headaches and hip pain. (RR, pp. 108-109). She said she had been slammed into a dashboard and that she had a prior hip issue which she thought related to being slammed into the ground. (RR, p. 109). He found bruising and a laceration on her head. (RR, p. 110). He took photographs of Gayla on May 11, 2015. (RR, pp. 110-111, R.'s Exs. 14 and 15). He diagnosed her with a neck sprain/strain and with scar tissue built up in her right hip area. (RR, p. 111). Tim Davis did not know what had caused the scar tissue. (RR, p. 112). It could have been from trauma or from repetitive stress. (RR, p. 112). Bruising and a head laceration on May 11, 2015 clearly should not be evident from an injury occurring in January 21, 2015. Further, Davis did not testify that the assault described by Gayla as occurring on January 21, 2015 had caused the neck sprain/ strain or any scar tissue

13

in the right hip area.  In fact, Davis could not even say that trauma had caused any such hip scar tissue.  It could just as easily have been caused by repetitive stress. (RR, p. 112).

Secondly, Gayla pleaded and testified that an assault occurred on June 10, 2015. (CR, p. 48, RR, pp. 81, 83-84; R's Ex. 10).  Gayla's own testimony brings causation into issue.  Gayla testified that she saw Tim Davis in June, 2015 after being slammed into the dashboard by Bryon.  (RR, p. 81).  She testified that Tim Davis took photographs of these injuries.  (RR, pp. 81-83).  She testified that in regard to this incident Bryon  had slammed her into the dashboard,  was throwing her all over and had her pinned under the steering wheel.   (RR, pp. 81-83).  She stated she had to be rescued by the Hopkins County Sheriff's Office.  (RR, pp. 81-83).  However, Tim Davis testified that he took photographs only on May 11, 2015.  (RR, p. 111; R.'s Exs. 14 and 15).  Furthermore, June 10, 2015 was the last day on which Tim Davis provided treatment to Gayla.  (RR, pp. 112, 118; R.'s Ex.16).  He described no new injuries that day as he treated her for the same thing every time. (RR, p. 113). Therefore, if Gayla was assaulted on June 10, 2015, she appeared to have suffered no new injuries from this assault.

Considering the above, the evidence is legally insufficient to support an award of damages from pain and suffering as there is no evidence that Byron's conduct

14

caused the injuries about which Gayla complains. Even if the Court finds the evidence legally sufficient, the evidence of such causation is so weak as to be clearly wrong and unjust or against the great weight and preponderance of the evidence.

As set forth above, Bryon asserts that the evidence fails to demonstrate a causal connection between any assault and a resulting injury, including mental anguish. However, assuming the Court finds such a causal connection, Bryon would show that the evidence is legally and/or factually insufficient to demonstrate mental anguish.

### *Past Mental Anguish*

In the present case, the Court found that plaintiff had distress that was more than mere disappointment, anger, resentment or embarrassment causing a substantial disruption in the plaintiff's daily routine, as supporting an award for mental anguish damages. (CR, p. 84). Mental anguish as an element of damages is a relatively high degree of mental pain and distress that is more than mere disappointment, anger, resent or embarrassment, although it may include all of these. *PNS Stores, Inc. v. Munguia,* 484 SW3d 503 (Tex. App.- Houston [ 14ᵗʰ Dist.} 2016, no pet.). Generally, plaintiffs may not recover mental anguish damages unless they introduce "direct evidence of the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiff's daily routine." *Universe Life Ins. Co. v. Giles,* 950 SW2d 48 (Tex. 1997). This standard is intended to ensure that

fact-finders are provided with adequate details to assess mental anguish. *Universe Life. Ins. Co. v. Giles,* supra. An award of mental anguish damages will survive a legal sufficiency challenge when the plaintiff introduces direct evidence of the nature, duration, and severity of his mental anguish, thus establishing a substantial disruption in the plaintiff's routine. *Fifth Club, Inc. v. Ramirez,* 196 SW3d 788 (Tex. 2006). The absence of direct evidence especially when it can be supplied by a plaintiff, justifies close judicial scrutiny of other evidence on this element of damages. *Katy Springs & Manufacturing, Inc. v. Favalora,* supra. In the absence of direct evidence, the Court of Appeals applies traditional no evidence standards to determine whether the record reveals any evidence of a high decree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger to support any award of damages. Simply because a witness says the plaintiff suffered mental anguish does not constitute evidence of the nature, duration and severity of any mental anguish that is sufficient to show a substantial disruption of one's daily routine. *Gunn Infiniti, Inc. v. O'Byrne,* 996 SW2d 854 (Tex. 1999).

In regard to mental anguish, Gayla testified that she worried about her work and what was going to happen to her. (RR, p. 24). She stated she had been depressed in the summer of 2015 and did not work but went back to work as a nurse when school started in August, 2015. (RR, p. 31). She worked until a few weeks before

16

the trial when she was laid off. (RR, pp. 70-71). She said she did not want to be a nurse anymore because she questioned her judgment and was nervous. (RR, p. 72). She was actually training for a new job to be a freight broker. (RR, pp. 72-73). She said she had trouble sleeping because she needed to be alert. (RR, pp. 73-74). She said she cried a lot. (RR, p. 74). On the other hand, she had only seen a counselor twice and that was only six weeks before the trial. (RR, p. 34). She had bought furnishings for her house. (RR, pp. 35, 79). Gayla was clearly angry but her daily life was not substantially disrupted. She worked for nearly a year and only stopped because she was laid off. She was training for a new career. She had her daughter living with her and had her in school. (RR, p. 103). Gayla had even dated some. (RR, p. 92). Gayla's testimony does not demonstrate a substantial disruption in her routine so as to demonstrate mental anguish.

Similar evidence asserted of "mental anguish" was offered in *Miller v. Argumaniz,* 479 SW3d 306 (Tex. App. - El Paso 2015, rev. den.). There the plaintiff testified that she was "very depressed", "scared", "concerned", "nervous, very angry, and kind of lost". She cried a lot, could not sleep, cried herself to sleep frequently, and had a hard time concentrating during the day. However, she continued to be employed throughout the ordeal, and navigated through her days by being strong for her daughter. The plaintiff's husband testified that he saw her cry up to fifteen

17

minutes as frequently as three to four times per week. Her son testified that she was affected for a year. The Court found that while this evidence constituted some evidence of the nature and duration of the emotional pain experienced, it failed to demonstrate a substantial disruption of her daily routine as a result. The Court, therefore, found the evidence insufficient to support the award for mental anguish.

Another case demonstrating that Gayla failed to offer sufficient evidence to support a finding of mental anguish is *Pay and Save, Inc. v. Martinez*, 452 SW3d 923 (Tex. App. - El Paso 2014, rev. dism.). There the plaintiff had previously undergone surgery for a brain tumor. While out shopping with his caregiver, he slipped on a cucumber peel. To keep from falling, he grabbed onto some beer boxes and twisted his spinal column, back, and the upper part of his body. A jury awarded him $8,000.00 for past mental anguish. As evidence for this award, the plaintiff testified that he was very nervous and scared when he slipped and was very worried about his spinal column, his ability to stand up, and a reopening of the operation performed on his head and thought a fall would reopen the surgical wound on his head and kill him. Plaintiff testified that he suffered mental anguish and described the same as his fear. He specifically testified that he was scared to go out at night. His caregiver testified that after the accident, the plaintiff was afraid to go out to walk and was always looking down at the floor thinking he was going to fall. The Court found that the

18

evidence presented in support of the jury's past mental anguish award focused on fear and anxiety regarding the slip at the store, walking and going out at night, and established that plaintiff needed additional assistance in putting on his shoes and socks and walking around his house. However, the Court found that the evidence failed to identify a "high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger" or to identify a substantial disruption of the plaintiff's daily routine. The Court, therefore, found the evidence insufficient to support the award.

In *Ortiz v. Furr's Supermarkets*, 26 SW3d 646 (Tex. App. - El Paso 2000, no pet.), the plaintiff, an employee of a cleaning service, was assaulted by employees of Furr's while he was performing cleaning services at a Furr's cafeteria. In support of his claim for mental anguish, the plaintiff testified that he felt offended and angry. He stated that he suffered from loss of sleep one or two times per month. He stated that his relationships were normal and his divorce was not caused by the incident. The court found the evidence factually insufficient to support an award for mental anguish as he offered no evidence as to the nature, duration, or severity of his mental anguish nor did he state how his daily routine was disrupted.

These cases demonstrate that the evidence offered by Gayla as to past mental anguish was legally and/or factually insufficient to support an award of damages for

19

mental anguish.

If the Court finds some evidence of pain and suffering but none as to mental anguish, and the trial court failed to segregate damages, and the evidence supports an award for one of the damages but is insufficient as to others, the case must be remanded for a new trial on the damages. *Pendergraft v. Carrillo*, 273 SW3d 362 (Tex.App. - Eastland 2008, rev. den.). Furthermore, when the Court remands for a new trial on claims involving unliquidated damages, it must also remand for a new trial on liability. *Pendergraft v. Carrillo*, supra.

For the above set forth reasons, this case should be remanded for a new trial as to liability and damages.

**ISSUE NO. THREE**

**WAS THE AWARD OF $200,000.00 FOR PAST PAIN AND SUFFERING AND MENTAL ANGUISH EXCESSIVE?**

**Arguments and Authorities**

Even if the Court finds that there was some evidence to support an award of damages for past pain and suffering and mental anguish, an award of $200,000.00 is excessive for the injuries claimed by Gayla.

The standard of review for an excessive damages complaint is factual sufficiency of the evidence. *General Motors Corp. v. Burry*, 203 SW3d 514 (Tex.

App.-Fort Worth 2006, rev. den.). Under a factual insufficiency assertion, the evidence supporting the finding must be so weak or the evidence to the contrary so overwhelming that the answer should be set aside and a new trial granted. *General Motors Corp. v. Burry*, supra. In determining whether damages are excessive, the appellate court applies the same test as for any factual insufficiency question, examining all the evidence in the record to determine whether all the evidence supports the damage award, remitting if some portion is so factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust. *Sunbridge Healthcare Corp. v. Penny*, 160 SW3d 230 (Tex. App.-Texarkana 2005, no pet.). If the trier of fact returns a grossly excessive or inadequate award, the appellate court will intervene, in accordance with recognized principle of law. *Sunbridge Healthcare Corp. v. Penny*, supra. A damage verdict will be set aside on appeal where the record clearly indicates that the award was based on passion, prejudice, or improper motive, or is so excessive as to shock the conscience. *Sunbridge Healthcare Corp. v. Penny*, supra.

In the present case, Gayla was awarded $200,000.00 for past pain and suffering and mental anguish even though she offered no evidence of any severe injury, a small amount of chiropractic expenses, and limited chiropractic treatment. Bryon Noble will address each element of the award separately as follows:

21

### *Past Pain and Suffering*

Although Gayla talked about various assaults, she offered little testimony concerning pain and suffering. The process of awarding damages for discretionary injuries such as pain and suffering is inherently difficult because the alleged injury is a subjective, unliquidated, nonpecuniary loss. However, only pain consciously suffered and experienced is compensable. *Sunbridge Healthcare Corp. v. Penny*, supra. Pain and suffering may be inferred or presumed as a consequence of <u>severe</u> injuries. *General Motors Corp. v. Burry*, supra. (emphasis added). The duration of the pain and mental anguish is an important consideration in determining damages awarded for pain and suffering. *General Motors Corp. v. Burry,* supra. The trier of fact is given a great deal of discretion in awarding an amount of damage it deems appropriate for pain and suffering. However, there must be some evidence to justify the amount awarded, as a jury cannot simply pick a number and put it in the blank. *General Motors Corp. v. Burry,* supra. The Court of Appeals may exercise its power and suggest a remittitur when there is insufficient evidence to support the full amount of damages awarded but sufficient to support a lesser award. If part of a damage award lacks sufficient evidentiary support, the proper course is to suggest a remittitur of that part of the verdict. The prevailing party in the trial court should be given the

option of accepting the remittitur or having the case remanded. *Larson v. Cactus Utility Co.*, 730 SW2d 640 (Tex 1987).

The evidence presented in this case was factually insufficient to support the amount of the damages so awarded. Gayla testified that on January 21, 2016, Bryon hurt her. He hit her, kicked her in the head, hit her in the head, put a scarf down her throat, and held her by the knees. (RR, pp. 62, 63). She went to the police department and had pictures taken. (RR, pp. 63, 64; R.'s Ex. 4). The pictures showed bruises and scrapes to her arms and legs. (RR, p. 65). She testified that the bruises were gone. (RR, p. 65). She testified that she hurt every day in her hips and the sides of her legs. (RR, p. 74). However, there was some indication that she had suffered back problems in the past. (RR, pp. 74, 75).

Gayla testified concerning an assault on June 10, 2015 in which her face was slammed into a dashboard. (RR, pp. 81-83). She said Bryon had choked her and was throwing her all over. (RR, p. 83). She testified that the picture of her black eye from this incident was taken in June by Tim Davis, a chiropractor she saw. (RR, p. 81).

As previously stated, Tim Davis's testimony was the only evidence offered by any healthcare provider. (RR, p. 108). He saw her beginning on May 11, 2015. (RR, pp. 108, 112). She complained of neck pain, headaches and hip pain. (RR, pp. 108-109). She said she had been slammed into a dashboard and that she had a prior hip

23

issue which she thought was related to being slammed into the ground. (RR, p. 109). He found bruising and a laceration on her head. (RR, p. 110). He took these photographs on May 11, 2015 and not after the alleged June assault. (RR, pp. 110-111, R.'s Exs. 14 and 15). He diagnosed her with a neck sprain/strain and with scar tissue built up in her right hip area. (RR, p. 111). Tim Davis did not know what had caused the scar tissue. (RR, p. 112). It could have been from trauma or from repetitive stress. (RR, p. 112). He treated her with physical and physiotherapy to decrease the edema and spasms from the sprain/strain. (RR, p. 112). He saw her from May 11, 2015 until June 10, 2015 for a total of seven appointments. (RR, pp. 112, 113; R.'s Ex 16). He treated her for the same thing every time. (RR, p. 113). He thought she got better but he did not see her much as he probably planned. (RR, p.113). She said she had pain but the orthopaedic testing that he performed did not show any severe damage. (RR, p. 113). Although he called her injury a whiplash, he did not grade it as any severe strain/sprain. (RR, p. 118). He believed she had improved with the treatment but she did not come as much as he had planned. (RR, p. 113).

Additionally, Gayla pleaded that an assault occurred on June 10, 2015 and testified about the assault. (CR, p. 48; RR, p. 83). Tim Davis saw her that day but nothing had changed in regard to her injuries. (RR, p. 112-113). She offered no

photographic evidence of any injury from an assault on June 10, 2015. Nor did she seek any medical attention after June 10, 2015.

In regard to Gayla's physical activities, pain and suffering did not appear to have impacted the same. She stated she did not work during the marriage because Bryon would not let her and not because she was physically unable. (RR, p. 29). After their separation, she had worked from August 2015 until two weeks before the final hearing as a charge nurse at a nursing home. (RR, pp. 30-31, 70-71). She was not working as a nurse at the time of the hearing because she had been laid off a few weeks before as her employer was downsizing. (RR, p. 31, 67, 71). She was in training to do freight brokering. (RR, p. 30, 72-73). She had gone out twice with two separate people since the separation. (RR, p. 92).

To support any award of damages, there must be evidence that the amount found would fairly and reasonably compensate for the loss. *Saenz v Fidelity and Guaranty Insurance Underwriters*, 925 SW2d 607 (Tex. 1996). Here, Gayla had only seen a chiropractor a total of seven times for injuries that were not severe and had improved the last time he saw her. The chiropractor had only found a sprain/strain. He had not referred her to anyone else for any further treatment. (RR, p. 117). She had no broken bones and no serious injuries. She sought no other medical treatment. At the time of the trial, it had been nearly ten months since she

25

had sought any medical treatment for her physical injuries. She offered no evidence of having been prescribed any medications and did not even offer evidence of having to take over the counter medications for pain. She had been able to work as a charge nurse for nearly a year after the last alleged assault which she testified occurred on June 10, 2015. She had even dated. She was living in the house in which she testified Byron had given her a one-half interest; she was driving a paid for 2010 Mercedes; carrying a Louis Vuitton purse; and working as a charge nurse. (RR, pp. 16, 17, 19, 21, 38-39, 58-60). Surely, if the pain was that intense she would have at least tried to sell the purse to get money for medical treatment. She described no action which she took to alleviate the pain. She did not testify as to the severity; duration; or extent of the pain. Unquestionably, these are important considerations in considering a proper damage award. *Sunbridge Healthcare Corp. v. Penny,* supra. However, Gayla offered no evidence of the same.

### *Past Mental Anguish*

The other element of the $200,000.00 award was past mental anguish. As previously detailed, mental anguish as an element of damages is a relatively high degree of mental pain and distress that is more than mere disappointment, anger, resentment or embarrassment, although it may include all of these. *PNS Stores, Inc. v. Munguia,* supra. Generally, plaintiffs may not recover mental anguish damages

26

unless they introduce "direct evidence of the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiff's daily routine." *Universe Life Ins. Co. v. Giles,* supra. This standard is intended to ensure that fact-finders are provided with adequate details to assess mental anguish. *Universe Life. Ins. Co. v. Giles,* supra. In addition to evidence of compensable mental anguish, evidence must also be presented to justify the amount awarded. *Saenz v. Fidelity & Guar. Ins. Underwriters,* supra. The trier of fact must find an amount that fairly and reasonably compensates for the loss. *Saenz v. Fidelity & Guar. Ins. Underwriters,* supra. The Texas Supreme Court has admonished courts to closely scrutinize such awards. *Saenz v. Fidelity & Guar. Ins. Underwriters,* supra.

As evidence of mental anguish, Gayla testified that she worried about her work and what was going to happen to her. (RR, p. 24). She stated she had been depressed in the summer of 2015 and did not work but went back to work as a nurse when school started in August, 2015. (RR, pp. 30-31). She worked until a few weeks before the trial when she was laid off due to her employer downsizing. (RR, pp. 30, 70-71). She said she did not want to be a nurse anymore because she questioned her judgment and was nervous. (RR, p. 71-72). She was actually training to be a freight broker. (RR, pp. 72-73). She said she had trouble sleeping because she needed to

27

be alert. (RR, pp. 73-74). She said she cried a lot. (RR, p. 74). On the other hand, she had only seen a counselor twice and that was only six weeks before the trial. (RR, p. 34). Gayla was clearly angry but her daily life was not substantially disrupted. She worked for nearly a year and only stopped because she was laid off. She was training for a new career. She had her daughter living with her and had her child in school. She had even dated some. She had a house to live in, a car to drive, and had been able to purchase new household furnishings from selling a $9000.00 ring which she had received from Bryon. (RR, pp. 16, 17, 19, 21, 58-60). The evidence simply does not support a large award of damages for mental anguish.

Furthermore, while each case must be judged on its own unique facts, it is proper to consider other approved awards in similar cases to determine if an amount awarded for pain and suffering and mental anguish is excessive. *Sunbridge Health Care Corp. v. Penny,* supra. As it is difficult to determine the proper amount to award for pain and suffering and mental anguish, comparison of an award with others which have secured approval of juries and courts tends to reinforce a determination of whether a particular award is reasonable compensation, or is to some extent the product of an understandable but improper attempt to award compensation not justified by evidence or permitted by law. *Landreth v. Reed,* 570 SW2d 486 (Tex. Civ. App.-Texarkana 1978, no writ).

Demonstrating that similar types of injuries have not resulted in such large awards, Bryon offers the following verdicts in cases recently tried as cited in the *Texas Lawyer*:

In *Jenkins v. Nguyen,* in the Harris County Court at Law, a jury awarded only $5,211.00 for compensatory damages arising from a car accident in which the defendant admitted liability to rear ending the plaintiff. The plaintiff claimed damages for neck and upper back pain, lumbar disk bulges, constant lower back pain, pain radiating into his legs, bilateral shoulder and hip pain, headaches, blurred vision, depression, anxiety, nervousness and ringing in the ears. (*Texas Lawyer*, July 1, 2016).

In *Cause No. DC-14-0306-K, in the 192nd Dallas County District Court* a teenager claiming back and neck injuries in a collision recovered only $457.00. (*Texas Lawyer*, July 1, 2016).

In *Fuents v. Kelley, No. DC-B-03019 in the 162nd Dallas County District Court*, a plaintiff claiming neck and back injuries and who went to a chiropractor for three and a half months was awarded $11,956.00 with liability stipulated to by the defendant. (*Texas Lawyer*, July 1, 2016).

In *Yarbrough v. Bell, No. DC-13-12628 in the 162nd Dallas County District Court,* the plaintiff was awarded $16,024.00 for back and neck injuries arising from a collision. (*Texas Lawyer*, July 1, 2016).

In *Gomez v. Cornip*, Cause No. 2014-40525 in the 281st Harris County District Court, a plaintiff was awarded $24,989.00 for neck, back and abdominal injuries arising from a car crash. (*Texas Lawyer*, July 1, 2016).

Additionally, see *Manning v. Golden*, 2014 WL 806326 (Tex. App.-Tyler, no pet.) wherein the plaintiff suffered significant physical injuries, including broken ribs, a punctured lung and pneumothorax, requiring the insertion of a chest tube, a broken nose, and facial lacerations, as well as bruises and contusions over large portions of her body as well as a shoulder injury. She further suffered from post traumatic stress syndrome as testified to by her doctor. The jury awarded $40,000.00 for past pain and suffering and mental anguish.

Appellant can find no case in which the injuries sustained were only bruises and a neck strain/sprain for which the only treatment sought was less than $600.00 for chiropractic treatment and when the only medical evidence came from a chiropractor who stated the injuries were not severe that resulted in such a large award. Had this been a car accident producing the same injuries, $200,000.00, under these set of facts as to injury would be regarded as excessive. Clearly, the court

wanted to punish Bryon rather than compensate Gayla for the injuries suffered. Even Gayla's own attorney's argument supports this position as he requested only $125,000 for the total amount of all actual damages sought. (RR, pp. 126, 127). Gayla's small amount of medical expenses alone demonstrate the lack of any severe pain and suffering. As for mental anguish, the cases discussed above clearly show there must be evidence of more than mere worry, anxiety, vexation, embarrassment, or anger. However, these are precisely the adjectives Gayla used while testifying to describe her current mental state.

For the above set forth reasons, the $200,000.00 award for past pain and suffering and mental anguish is excessive and manifestly unjust. Bryon requests the court to remit the award or to remand this case for a new trial.

## ISSUE NO. FOUR

**WAS THE EVIDENCE LEGALLY SUFFICIENT TO SUPPORT THE TRIAL COURT'S AWARD OF $25,000.00 FOR FUTURE PAIN AND SUFFERING AND MENTAL ANGUISH?**

## ISSUE NO. FIVE

**WAS THE EVIDENCE FACTUALLY SUFFICIENT TO SUPPORT THE TRIAL COURT'S AWARD OF $25,000.00 FOR FUTURE PAIN AND SUFFERING AND MENTAL ANGUISH?**

**Arguments and Authorities**

Bryon adopts the standard of review as set forth in Issue Nos. One and Two as well as the authorities previously cited in regard to pain and suffering and mental anguish.

### *Award as to Future Pain and Suffering*

The duration of pain is an important consideration in any damage award. *Figueroa v. Davis,* 318 SW3d 53 (Tex. App. - Houston [1st Dist.] 2010, no pet.). The mere fact of the existence of an injury does not prove compensable pain and suffering. *Gibbins v. Berlin*, 162 SW3d 335 (Tex. App. - Fort Worth 2005, no pet.). Evidence of continuing pain can support an award for future physical pain. *Gibbons v. Berlin*, supra. Damages for future physical pain and suffering are recoverable in a personal injury action if the trier of fact could reasonably infer that the plaintiff will feel physical pain in the future. *PNS Stores, Inc. v. Munguia,* supra.

Gayla testified that she hurts every day in her hips and her legs. (RR, p. 74). Gayla acknowledged that all her bruising was gone. (RR, p. 65). She described no neck or back pain. The chiropractor said she had neck sprain/strain. (RR, p. 111). His testing showed no severe damage. (RR, pp. 113, 114, 118). He did not refer her to any other medical provider. (RR, p. 117). He believed she had improved. (RR, p. 113). He testified that she had scar tissue built up on the right hip but it could have

32

been caused by repetitive stress or trauma. He stated no opinion as to which he believed caused the same. (RR, p. 112).

The only evidence of any injury to Gayla's legs was bruising. These were gone by the time of trial. (RR, p. 65). As to the hip pain, Gayla offered no competent evidence that such was caused by any assault by Bryon Noble. Again, a plaintiff can only recover for injuries caused by the event made the basis of the suit. *Texarkana Memorial Hospital, Inc. v. Murdock,* supra. As previously stated, expert testimony is necessary to establish causation to medical conditions outside the common knowledge and experience of jurors. *Guevara v. Ferrer,* supra. Testimony regarding possibilities does not establish causation as set forth above. *Duff v. Yelin*, supra.

In the present case, there is no evidence demonstrating that any trauma caused any scarring/bursitis to Gayla's hip. It was simply possible as it was possible that such was simply caused by repetitive activity. Therefore, if plaintiff was continuing to experience pain in the hip there is no evidence or factually insufficient evidence to demonstrate that Bryon's actions caused the same. Even if the court attributes the hip's scar tissue to Bryon, there was not severe damage so as to support such a finding for future pain and suffering.

Davis testified as to no treatment performed on Gayla's legs. Bruising that had already resolved was the only injury attributable thereto. Again, there is no material

evidence that future pain in the leg would be attributable to any injury caused by Bryon.

### *Future Mental Anguish*

To support an award for future mental anguish a plaintiff must demonstrate a reasonable probability that he would suffer compensable mental anguish in the future. Even when an occurrence is of the type for which mental anguish damages are recoverable, evidence of the nature, duration, and severity of the mental anguish are required. *PNS Store, Inc. v. Munguia,* supra. To meet the reasonable probability rule, as required to support an award for future mental anguish, a plaintiff must (1) present evidence that in reasonable probability, he will suffer damages in the future and (2) prove the probable reasonable amount of the future damages. *Katy Springs & Manufacturing, Inc. v. Favalora,* supra. Furthermore, a plaintiff can recover only for injuries caused by the event made the basis of the suit. *Texarkana Memorial Hospital, Inc. v. Murdock,* supra. The amount of evidence needed to support an award for future mental anguish is extensive as demonstrated in *Katy Springs & Manufacturing, Inc. v. Favalora*, supra.

In the *Katy Springs* case, supra, the plaintiff had suffered severe neck/back injuries that required fusion surgery. The plaintiff's doctor testified that the plaintiff was depressed and had even cried in his office. The doctor further testified that:

**"I think we need to get him, as I recommended, in physical therapy and psychiatric treatment otherwise, he's going to have a miserable future. He's already depressed; basically crying in the office. He's told me he's been to the emergency room, not because he had an increase in his pain, just he couldn't deal with it (the pain) so tired of living with it (the pain). So I think that you know, he's going to become a long-term chronic pain patient. And especially with a psychological overlay from the depression, it's not a very bright future. That's why we need to get him into (physical) therapy and get him to a psychiatrist."**

The court found that such evidence did not demonstrate a reasonable probability that the plaintiff would suffer compensable mental anguish in the future. The court found that the severity of the injury and the evidence of his mental pain did not rise to the level of the severity of the evidence propounded in other personal injury cases. The evidence that he was "very depressed" and could look forward to a bleak future unless he received psychiatric treatment - were not specific evidence of the lasting nature, severity, and duration of the plaintiff's mental anguish.

The evidence offered by Gayla fails to meet this high standard. Gayla had only gone to a counselor twice but did not bring this person to testify. She had stopped working as a nurse because she was laid off - not fired. She was able to train for a new career. She had been able to continue to furnish her home; keep possession of her daughter, and to date two separate people. (RR, pp. 30, 31, 35, 71-73, 92, 103). She did not show a reasonable probability that any future mental anguish was likely to be suffered.

For the above set for reasons, the evidence was legally and/or factually insufficient to support an award of damages for future pain and suffering and mental anguish.

## ISSUE NO. SIX

**WAS THE AWARD OF DAMAGES FOR DAMAGES FOR FUTURE PAIN AND SUFFERING AND MENTAL ANGUISH EXCESSIVE?**

**Arguments and Authorities**

For purposes of this argument, Appellant adopts by reference the arguments and authorities previously cited as well as the standard of review set forth in Issue No. Three.

Even if the Court finds that Gayla has offered sufficient evidence to support an award of damages for future pain and suffering and mental anguish, the amount awarded must be supported by evidence that the amount is fair and reasonable. *Durban v. Guajardo,* 79 SW3d 198 (Tex. App. - Dallas 2002, no pet.). The law requires appellate courts to conduct factual sufficiency reviews on damage awards in personal injury cases. *Hawkins v. Walker,* 238 SW3d 517 (Tex. App. - Beaumont 2007, no pet.).

Here, Gayla was working as a nurse and had for the prior nine months, had sought no medical treatment and limited counseling, was taking care of her daughter, and had dated on at least two occasions. (RR, pp. 30, 34, 70-73, 92, 103). From the cases previously cited, these damages were so excessive as to shock the conscience.

For such reasons, this case should be remanded for a new trial as the evidence is factually insufficient to support the amount of damages awarded or a remittitur of the damages.

## ISSUE NO. SEVEN

**WAS THE EVIDENCE LEGALLY SUFFICIENT TO SUPPORT THE AWARD OF DAMAGES FOR DISFIGUREMENT?**

## ISSUE NO. EIGHT

**WAS THE EVIDENCE FACTUALLY SUFFICIENT TO SUPPORT THE AWARD OF DAMAGES FOR DISFIGUREMENT?**

**Arguments and Authorities**

The Court's award to Gayla of $25,000.00 for "disfigurement" is neither legally nor factually sufficient to support such an award for either past and/or future disfigurement.

37

The courts define disfigurement as "that which impairs or injures the beauty, symmetry, or appearance of a person..."that which renders unsightly, misshapen or imperfect, or deforms in some manner." *Pendergraft v. Carrillo,* supra (quoting *Goldman v. Torres,* 341 SW2d 154, 160 (1960); *Sunbridge Healthcare Corp. v. Penny*, supra. Feelings of embarrassment of the victim are insufficient alone to infer that the injury is in fact sufficiently disfiguring to justify an award of damages. *Sharon v. Martinez*, 900 SW2d 777 (Tex. App. - Corpus Christi 1996, no pet.). Damages for disfigurement must be measured from the date of the injury until the time disfigurement is expected to end. *Sunbridge Healthcare Corp. v. Penny*, supra. While proof of additional scarring or deforming is not required to recover damage for future disfigurement, it is a factor which the Court may consider in awarding damages. *Hopkins County Hospital District v. Allen*, 760 SW2d 341 (Tex. App.–Texarkana 1988).

Gayla offered photographs of herself taken after the alleged January 21, 2015 assault. (RR, p. 64, 66; R.'s Exs. 3 and 4). She stated that all the bruises were gone but that she had scars on her arms and legs. (RR, p. 65-66; 76-77). Gayla testified that she had pictures taken the day before the trial showing these same "scars" . (RR, pp. 75-77, R.'s Exs. 7 and 8) She also stated that she had a scar above her nose from

being hit with a metal wall hanging, which appears to be a slight mark. (RR, p. 68, R.'s Ex. 5; (R.'s Ex. 15; RR, p. 75).

Any scarring suffered by Gayla seems minimal. These slight marks do not impair Gayla Noble's appearance so as to rise to the level of compensable disfigurement. The evidence does not legally and/or factually support an award of damages for disfigurement in the past.

As to any future disfigurement, Gayla acknowledged that all bruising was gone. (RR, pp. 65-66). She testified that she was embarrassed by the scars but frequently wears shorts. She could not state that the scarring was keeping her from doing anything. (RR, p. 78). Only "everything" kept her from doing anything. (RR, p. 78). The evidence does not legally and/or factually support an award of damages for disfigurement in the future.

As support for this position, see *Pendergraft v. Carillo,* supra. In *Pendergraft*, the plaintiff was working in a stone quarry when he was struck in the face by an air compressor hose. He sustained a non-displaced fracture of his jaw and a 2.5 centimeter laceration below his lip. Doctors secured a plate to the plaintiff's jaw, and he experienced tooth pain and expressed a desire to have several teeth removed. Nevertheless, the court stated there was no evidence that the plaintiff had scarring or

any other type of disfigurement, and therefore there was insufficient evidence to support the trial court's finding that the plaintiff suffered disfigurement.

For the above set forth reasons, the evidence is legally and/or factually insufficient to support the award of damages for past and/or future disfigurement.

## ISSUE NO. NINE

**WAS THE AWARD OF $25,000.00 IN DAMAGES FOR DISFIGUREMENT EXCESSIVE?**

**Arguments and Authorities**

Bryon adopts by reference the standard of review as set forth in Issue No. Three.

Even if the Court finds the evidence sufficient to support an award of damages for disfigurement, the amount of $25,000.00 awarded was grossly excessive. The evidence presented is simply factually insufficient to support such an award whether for past and/or future disfigurement. While each case must be judged on its own facts, it is proper to consider other approved awards in similar cases to determine if a damage award is excessive. *Sunbridge Health Care Corp. v. Penny*, supra.

In this regard, Bryon would ask the Court to consider the amount of damages awarded in cases with much more extensive evidence of disfigurement as follows:

40

In *Figueroa v. Davis*, supra, the plaintiff was struck by another driver who ran a stop sign. The plaintiff's front teeth crumbled out of his mouth, leaving only small pieces at his gumline that were not pulled until almost five years later and were still missing at the time of trial. The jury awarded $10,000.00 for past disfigurement.

In *Smith v. Carter,* 2012 WL 3252499 (Tex. App. - Corpus Christi, rev. den.), the plaintiff was thrown into a windshield which shattered during a traffic accident. Among other injuries, the plaintiff sustained a scar on her forehead for which she had consulted a plastic surgeon. She further needed surgery to remove glass fragments that remained embedded in her forehead. The trial court awarded $5,000.00 for past disfigurement.

These cases demonstrate more severe disfigurement than that demonstrated by Gayla with a far lesser amount awarded therein. Again, the court's award was intended to punish Bryon as opposed to compensating Gayla Noble.

For the above set for reasons, this award of damages should be reversed and rendered and/or reversed and remanded for a new trial and/or the Court should order a remittitur.

**ISSUE NO. TEN**

**WAS THE EVIDENCE LEGALLY SUFFICIENT TO SUPPORT THE AMOUNT OF MEDICAL EXPENSES AWARDED TO GAYLA NOBLE?**

## ISSUE NO. ELEVEN

**WAS THE EVIDENCE FACTUALLY SUFFICIENT TO SUPPORT THE AMOUNT OF MEDICAL EXPENSES AWARDED TO GAYLA NOBLE?**

**Arguments and Authorities**

Bryon adopts by reference the standard of review as set forth in Issues No. One and Two.

In regard to medical expenses, Gayla offered only the testimony of a chiropractor, Tim Davis. Davis testified it was apparent that Gayla had suffered some type of trauma to her neck. (RR, p. 111). He said she had some scar tissue built up in her right hip bursa area. (RR, p. 111). He said that it could have been caused by trauma or by repetitive stress. (RR, p. 112). He could not pinpoint that on anything. (RR, p. 112). He, therefore, did not opine that any hip injury was the result of trauma.

An analogous situation was presented in *Guevara v. Ferrer,* supra. There an 86 year old man was involved in a car accident. He was hospitalized following the accident. The only medical evidence offered was a medical record that the plaintiff had been in an automobile accident in which he sustained multiple orthopedic injuries and had developed bacteria and respiratory distress. The medical records also noted other serious health issues which the plaintiff had suffered in the past. He was awarded over $1,000,000.00 in medical expenses. No doctor actually testified but

42

rather the plaintiff's family members testified that the accident had caused all of his injuries.

The Supreme Court found that while some injury could be established by the evidence, all the injuries for which plaintiff had been treated were not established by competent expert testimony and remanded the case for remittitur.

Here, the evidence does not show that all treatment provided to Gayla Noble resulted from any assault but could have also arisen from repetitive activity, such as a nurse would perform.

Secondly, even if the Court finds that the chiropractic expenses were reasonably and necessarily caused by Bryon's conduct, the evidence is insufficient to support the amount of medical expenses awarded by the court. Tim Davis testified that he had charged $300.00 - $400.00 for treating Gayla. (RR, p. 115). His chiropractic charges were reflected on Exhibit 16. (RR, p. 116; R's Ex. 16). The chart reflected charges of $407.00. There is no evidence to support an award of $600.00. For such reason, the Court should reverse the judgment and remand the case for a new trial. In cases where there is evidence to support some damages but no evidence to support the amount awarded, the court may remand or do a remittitur. *Guevara v. Ferrer,* supra.

These principles are demonstrated in *Rentech Steal, LLC. v. Teel*, 299 SW3d 155 (Tex. App. - Eastland 2009, rev. dism.). There the jury awarded $550,000.00 in past medical expenses but the evidence proved only $381,788.00. The Court noted it could remand for a new trial or suggest a remittitur.

For the above set for reasons, this award of damages should be reversed and rendered and/or reversed and remanded for a new trial and/or the Court should order a remittitur.

## ISSUE NO. TWELVE

**WAS THE EVIDENCE LEGALLY SUFFICIENT TO SUPPORT A FINDING THAT BRYON NOBLE MADE A GIFT OF A ROLEX WATCH TO GAYLA NOBLE?**

## ISSUE NO. THIRTEEN

**WAS THE EVIDENCE FACTUALLY SUFFICIENT TO SUPPORT A FINDING THAT BRYON NOBLE MADE A GIFT OF A ROLEX WATCH TO GAYLA NOBLE?**

## Arguments and Authorities

Bryon adopts by reference the standard of review as described in Issues No. One and Two.

Three elements are required to establish the existence of a gift: (1) intent to make a gift; (2) delivery of the property; and (3) acceptance of the property. *Roberts v. Roberts,* 999 SW2d 424 (Tex. App. - El Paso 1999, no pet.). The person claiming

44

a gift must prove the gift by clear and substantial evidence. *Hayes v. Rinehart*, 65 SW3d 286 (Tex.App. - Eastland 2001, no pet.). The element of intent to make a gift, as required to establish the existence of a gift must exist at the time of transfer. *In re Marriage of Moncey,* 404 SW3d 701 (Tex. App. - Texarkana 2013, no pet.). Circumstantial as well as direct evidence is competent either to sustain or to defeat a gift. *Jones v. Jones,* 181 SW2d 988 (Tex.Civ.App. - Dallas 1944 writ ref'd w.o.m.). Where however, witnesses do not attempt to state a purported donor's oral expressions, word for word, or in substance, but give their understanding of the donor's words, those opinions have no probative value. *Christian v. Walker,* 381 SW2d 675 (Tex.Civ.App. - Texarkana 1964, no writ). _____

In the present case, Gayla claimed that Bryon gave her his Rolex watch. She claimed that he had just beat on her, did not want her to leave, said he loved the watch, and took it off his wrist. She further testified that he said that he loved this more than anything else in his world and that this should show her how serious he was. (RR, p. 87).

Her attorney then stated:

> Q.     And he made a gift of it to you. That was your conclusion from what he said?
>
> Y.     Yes.

45

However, Gayla then testified that Bryon filed an insurance claim for the watch as having been stolen and that he had wanted her to go along with it. (RR, pp. 87-88). Gayla Noble had in fact pawned the watch. (RR, pp. 89-90). She claimed she had pawned it because it was a very "pricey" watch and she wanted it to be safe as she was afraid it would be stolen or she would lose it. (RR, p. 90). She testified that she got it out of the pawn shop and took it to the police. (RR, p. 90).

Neither Gayla's actions nor Bryon's actions evidence the intent to make a gift. Circumstantially, a man's Rolex watch would seem an unusual gift for a woman. Pawning a "pricey" watch to keep it from being stolen or lost would seem to be more in line with someone trying to hide or secret the same which would seem hardly necessary if the person in possession is the owner.

Gayla may have had possession of the watch but donative intent was not established. An analogous situation was presented in *Christian v. Walker,* supra. There a son contended that his father had orally given him some land. The testimony was as follows:

> Q.    As I understand you, it was this: That your father said "if you will quit your job, and go down there and keep it up, it will be yours. Isn't that what you testified?
>
> A.    I moved down there with intention it was mine.
>
> Q.    If you would quit and move down there, it would be yours?

46

A.   Well, I don't know whether it was just exactly those words, but that's pretty close.

Q.   That's the substance of it, isn't it?

A.   Yes sir...

The Court found that the evidence produced cannot be construed as a clear manifestation that the father intended to vest the rights of ownership to the land at the time of the conversation.

Taking Gayla's testimony at face value, it cannot be construed as a clear manifestation that Bryon intended to make of gift of the same to Gayla.

For the above set forth reasons, the portion of the decree awarding Bryon's Rolex watch to Gayla as her sole and separate property should be reversed and rendered and/or alternatively, the case should be reversed and remanded for a new trial.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Appellant respectfully prays that this Honorable Court set this case for oral argument, reverse and render the award of damages, or remand this case for a new trial, or remit the award.

Respectfully submitted,

THE MOORE LAW FIRM, L.L.P.

47

BY:/s/ Judy Hodgkiss\
    Judy Hodgkiss\
    State License #17136525\
    100 North Main Street\
    Paris, Texas 75460-4222\
    Telephone 903/784-4393\
    Facsimile 903/783-0042\
    Email: jhodgkiss@moorefirm.com\
    ATTORNEYS FOR APPELLANT,\
    KERRY BRYON NOBLE

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, the Brief of Appellant was a computer-generated document and contains 10,753 words, not including the Appendix, if any. The undersigned attorney certifies that she relied on the word count of the computer program, which was used to prepare this document.

s/Judy Hodgkiss\
Judy Hodgkiss\
jhodgkiss@moorefirm.com

## CERTIFICATE OF SERVICE

I certify that a true copy of the above document was delivered to all attorneys of record/parties, in accordance with the Texas Rules of Appellate Procedure this 12th day of August, 2016.

/s/ Judy Hodgkiss
Judy Hodgkiss
jhodgkiss@moorefirm.com

# **APPENDIX**

1.  Final Decree of Divorce

2.  Findings of Fact and Conclusions of Law